United States Court of Appeals,

Fifth Circuit.

No. 95-20653.

Christopher FELCH, Individually and as Representative of the Estate of Carol Hoffman Stein, Deceased, Plaintiff-Appellee,

v.

TRANSPORTES LAR-MEX SA DE CV, et al., Defendants,

Transportes Lar-Mex SA DE CV, Defendant-Appellant.

Aug. 22, 1996.

Appeal from the United States District Court for the Southern District of Texas.

Before GARWOOD, HIGGINBOTHAM and BENAVIDES, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellee Christopher Felch (Felch) filed this wrongful death and survival suit in Texas state court. Defendant-appellant Transportes Lar-Mex (Lar-Mex), a carrier of goods incorporated in Mexico, removed the case to the court below and shortly thereafter filed a motion to dismiss for lack of personal jurisdiction. Following a hearing on the issue of personal jurisdiction, the district court denied Lar-Mex's motion. Lar-Mex thereafter gave notice to the district court that it would not participate in the litigation other than to continue asserting its jurisdictional defense. When Lar-Mex failed to appear at a pre-trial conference, the district court entered default judgment against Lar-Mex. Thereafter, following a hearing to assess Felch's damages, the district court entered judgment in Felch's favor. Lar-Mex appeals.

**Facts and Proceedings Below**

Carol Hoffman Stein, Felch's mother, was operating her vehicle on a Mexican highway, between Monterrey, Mexico and Nuevo Laredo, Mexico, on November 27, 1991, when she was killed in a head-on collision with a Lar-Mex tractor trailer operated by Lar-Mex employee Clemente Alvarez Velasquez.

On September 15, 1993, Felch, individually and as representative of the estate of his deceased

mother, filed this wrongful death and survival suit in Texas state court against Lar-Mex and Julio Cesar Gonzalez Garcia[1]. In response, Lar-Mex filed a special appearance objecting to jurisdiction. Lar-Mex subsequently removed the case to the district court below on the basis of diversity jurisdiction. Then, shortly following removal, Lar-Mex filed a motion to dismiss for lack of personal jurisdiction.[2]

Counsel for Felch and Lar-Mex met in San Antonio, Texas, and agreed upon a discovery plan as required by Fed.R.Civ.P. 26. Counsel agreed to limit discovery to the jurisdictional issue until the district court ruled on Lar-Mex's motion to dismiss. Accordingly, on May 17, 1994, Felch took the deposition of Americo Raymon Garcia-Rodriguez (Garcia), the designated representative of Lar-Mex, in Laredo, Texas. This deposition testimony revealed the following:

(1) Lar-Mex is a corporation incorporated in Monterrey, Mexico;

(2) None of Lar-Mex's offices are located in the United States;

(3) Lar-Mex conducts business as a carrier of goods in Mexico and, to a very limited degree, in the United States;[3]

---

[1]Julio Garcia was apparently named as a defendant by mistake. He was never served with process, never made any appearance, and Felch has not indicated that he is seeking relief from this defendant.

[2]Lar-Mex never filed an answer in this lawsuit.

[3]Felch contends that Garcia's testimony revealed that Lar-Mex "collects" various products from all over Mexico, transports these products by truck to Nuevo Laredo, Mexico (a town on the south side of the border between Mexico and Texas), and then attempts to secure agreements with customers to truck these products across the border and deliver them to warehouses located in the Laredo, Texas, area for a fee. Lar-Mex's characterization of Garcia's testimony in this regard seems to suggest different activity; Lar-Mex contends that Lar-Mex trailers will occasionally be taken "*to* the Texas border" (emphasis added), but that these trailers immediately depart south from the border into Mexico immediately after being unloaded, with all fees being received in Mexico; additionally, Lar-Mex argues that there is no evidence as to whether or not these services were continuous and systematic. Finally, Lar-Mex contends that nothing in the record supports Felch's assertion that Lar-Mex pursues agreements with its customers to transport merchandise across the border and into Texas. In his deposition, Garcia testified that Lar-Mex would, under certain circumstances, drop loaded trailers off in Laredo, Texas:

"Q: So, sometimes Lar-Mex will drop the trailer and leave the trailer in Nuevo Laredo [Mexico]; and other times when the customer will pay for it, you'll bring the trailer into Laredo [Texas] itself?

(4) Lar-Mex does not have any representatives or employees in the United States;

(5) Lar-Mex is not licensed in the United States to operate as a motor carrier;

(6) Lar-Mex collects merchandise in Nuevo Laredo and distributes this merchandise in Mexico;[4]

(7) Lar-Mex does not advertise in Texas;  it does not carry a yellow page ad in Texas;

(8) Lar-Mex does not have a telephone line in Texas or anywhere else in the United States, although its name does appear in the Laredo, Texas, telephone book within the section relating to Nuevo Laredo, Mexico;

(9) It is ordinary in the course of Lar-Mex's business to make telephone calls to and receive telephone calls from customers officing in Laredo, Texas—coordinating shipments and receiving orders and communications;

(10) Lar-Mex contracted to purchase trailers from the Laredo, Texas, office of Xtra Lease;[5]

(11) Lar-Mex purchased an air pistol used to repair flat tires on its trucks from a Laredo,

---

A: Uh-huh.

Q: And how far in Laredo does Lar-Mex go to drop the trailer for the customer?

A: About 15 miles into Laredo.

... Q:  Okay.  If the customer requests and pays for it, can you, for example, take a shipment of goods or merchandise to a customer's warehouse within the 15 miles that you've already talked about?

A: Yes, we do."

This is essentially the only evidence on this matter.

[4]Lar-Mex denies the existence of any indication in the record that any of the merchandise collected by Lar-Mex in Nuevo Laredo, Mexico, originates in Texas.  However, when asked whether Lar-Mex ships goods, merchandise, or commodities "that come from the United States originally," Garcia responded affirmatively.  There is, however, no evidence that any of the mentioned merchandise originated in Texas.  Garcia also stated that Lar-Mex is "not allowed to pick up merchandise in Texas" (and there is no evidence that it does).

[5]Lar-Mex suggests that this transaction had gone no further than the placement of a purchase order.  In his deposition, Garcia referred to the purchase order and to the "boxes [trailers] that we are going to be buying."  There is no other evidence in this respect.

Texas company, and additionally purchased wheels for which payment was due in Laredo, Texas;

(12) Lar-Mex leased several trailers from Strick Lease, the predecessor of Xtra Lease; Lar-Mex made monthly lease payments which were sometimes sent by mail to Laredo, Texas; on occasion, these payments were picked up at Lar-Mex's Nuevo Laredo office;[6]

(13) Lar-Mex has agreements with companies officing in Laredo, Texas, warranting that Lar-Mex will return trailers belonging to those companies in the same condition in which Lar-Mex received these trailers;[7]

(14) Lar-Mex employed a specific designation on its invoices to identify shipments transported by Lar-Mex across the Mexico-Texas border and into Laredo, Texas;

(15) Lar-Mex procured an insurance policy to cover "vehicles" for which Lar-Mex is responsible and which Lar-Mex operates within Texas; this coverage is conditioned on Lar-Mex taking these vehicles (into Texas) no further than 26 miles from the Mexico-U.S. border; and

(16) At the time of the accident, Clemente Alvarez Velasquez was driving a Lar-Mex tractor trailer in the course of Lar-Mex's business;[8] the truck was going from Monterrey, Mexico, to Nuevo Laredo, Mexico.

On June 7, 1994, Felch filed his opposition to Lar-Mex's motion to dismiss for lack of

---

[6] Felch notes that Garcia signed an equipment lease agreement with Strick Lease on behalf of Lar-Mex and listed his title as "G & E Laredo."

[7] One such agreement, detailed in a document entered into evidence during Garcia's deposition, defines how Lar-Mex is to use, insure and maintain that company's trailers. Additionally, this agreement contemplates that disputes are to be settled in a United States court employing U.S. law. Moreover, Garcia signed this agreement on behalf of Lar-Mex, listing his title as "Gerente General (Laredo)".

[8] Felch further characterizes Garcia's testimony as asserting that Lar-Mex "hoped" that it would be hired by the customer financing this shipment to take the shipment on from Nuevo Laredo, Mexico, to a designated location in Laredo, Texas. Lar-Mex responds that there is nothing in the record to indicate that this shipment was destined for Texas. In fact, Lar-Mex contends that the record contains no indication that *any* of the goods transported by Lar-Mex are destined for Texas. Furthermore, Lar-Mex denies any indication in the record that it "hoped" to be hired to take the merchandise involved in the accident into Laredo, Texas. In his deposition, Garcia simply stated, "And if they were to hire me, to contract me, then I might have delivered [the shipment involved in the accident] in Texas." That is the only evidence on this matter.

4

personal jurisdiction, attaching excerpts from Garcia's deposition. Then, on June 21, 1994, Lar-Mex filed a reply to this opposition, attaching the entire transcript of Garcia's deposition.

The district court subsequently scheduled a hearing on Lar-Mex's motion to dismiss. After receiving an additional reply filed by Felch, the court held this hearing on July 29, 1994. The court denied Lar-Mex's motion on August 30, 1994.

Lar-Mex then filed a motion to reconsider, and Felch filed his opposition thereto. The district court denied this motion on November 22, 1994.

Lar-Mex filed no other pleading in the case until April 3, 1995, when it gave notice to the court that it would not participate in the litigation any further other than to rely on its jurisdictional defense.

Thereafter, the court set a pre-trial conference for June 22, 1995. When Lar-Mex did not appear at this hearing, the district court entered a default judgment against Lar-Mex. Accordingly, the district court conducted an evidentiary hearing on Felch's damages. No evidence was presented at this hearing on the jurisdictional issue concerning Lar-Mex's contacts with Texas. The district court entered final judgment on August 18, 1995, awarding Felch a total of $1,120,591.51 in damages, plus interest and costs. Lar-Mex appeals.

## Discussion

The exercise of personal jurisdiction over a nonresident defendant comports with principles of due process when two requirements are met. First, the nonresident defendant must have "purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts' with that forum state." *Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 315-17, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)), *cert. denied,* --- U.S. ----, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994). Second, the exercise of jurisdiction over the nonresident defendant must not "offend "traditional notions of fair play and substantial justice.' " *Wilson,* at 647 (quoting *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987)).

5

"The "minimum contacts' prong of the inquiry may be further subdivided into contacts that give rise to "specific' personal jurisdiction and those that give rise to "general' personal jurisdiction. Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. General jurisdiction, however, will attach, even if the nonresident defendant's contacts with the forum state are not directly related to the cause of action, if the defendant's contacts with the forum state are both "continuous and systematic.' " *Wilson,* at 647 (citations omitted).

Finally, if the nonresident defendant's related or unrelated minimum contacts with the forum state are sufficient, "[W]e must then consider whether the "fairness' prong of the jurisdictional inquiry is satisfied." *Id.* (citations omitted).[9]

I. Specific Personal Jurisdiction

"When the facts are not in dispute, we review *de novo* a district court's determination that its exercise of personal jurisdiction over a nonresident defendant is proper." *Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994); *see also Kevlin Services, Inc. v. Lexington State Bank,* 46 F.3d 13, 14 (5th Cir.1995).

In considering whether Lar-Mex had contacts with Texas sufficient to warrant the exercise of specific personal jurisdiction (specific jurisdiction), this Court must determine whether the present litigation resulted from injuries arising out of or related to the nonresident defendant's contacts with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413-16 & n. 8, 104 S.Ct. 1868, 1872 & n. 8, 80 L.Ed.2d 404 (1984); *Jones v. Petty-Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1068 (5th Cir.) (specific jurisdiction is proper only if the cause of action arises from a particular act or activity in the forum), *cert. denied,* 506 U.S. 867, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992).

In the present case, the following facts are undisputed: (1) the fatal accident underlying Felch's cause of action occurred on a highway in Mexico between Nuevo Laredo and Monterrey; (2)

---

[9]The factors that should be considered in conducting this "fairness" inquiry are:

"[T]he burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies'; and (5) "the shared interest of the several States in furthering fundamental substantive social policies.' " *Wilson,* at 647 n. 3 (citations omitted).

6

Carol Hoffman Stein, Felch's mother, died in Mexico; and (3) all of the defendant's negligence, if any, occurred in Mexico. These facts preclude a finding that the instant litigation resulted from injuries arising out of or related to contacts between Lar-Mex and Texas.[10]

---

[10]During the hearing held on July 29, 1994, the nature of which we will return to, *infra,* the district court questioned counsel for both parties regarding personal jurisdiction. The following exchanges took place concerning specific jurisdiction:

> "THE COURT: Okay. What about specific jurisdiction? Does that apply when any contacts would arise on an occasional delivery, or is it too remote? Relative to the concept of specific jurisdiction. Why doesn't specific jurisdiction apply when contacts with the U.S. would arise, or would it arise from delivery of goods occasionally by your trucking company, as you say, just occasionally?
>
> [Counsel for Lar-Mex]: Are you saying if those particular goods, for example this accident?
>
> THE COURT: Well, by specific jurisdiction, the concept of specific jurisdiction, would that arise at all by occasional delivery, or would that be just general jurisdiction? I mean—
>
> [Counsel for Lar-Mex]: That would be general jurisdiction.
>
> THE COURT: Not specific to this suit, in other words?
>
> [Counsel for Lar-Mex]: Yes.
>
> THE COURT: All right. Anything further?

At this July 29, 1994, hearing, counsel for the plaintiff argued that the facts of the present case created specific jurisdiction:

> "[Counsel for Felch]: So my client on the roadways in Mexico at the time of the occurrence is hit by this truck that is on its way to Nuevo Laredo with goods that are going to be brought into Texas.
>
>    That is a specific connection between this accident and the jurisdictional facts of this case. That is what makes for specific jurisdiction here.

Later in the hearing, the district court returned to this contention:

> "THE COURT: Well, was [the load of goods involved in the fatal accident] definitely coming to the U.S. or not?
>
> [Counsel for Felch]: The goods were destined for the United States. There is no question about that. The question was who was to bring them across the border and that would be negotiated once it got to Nuevo Laredo but for this accident, which of course interrupted the journey.

7

This conclusion is supported by other decisions in this Circuit. In *Bullion v. Gillespie,* 895 F.2d 213, 217 (5th Cir.1990), this Court held that the plaintiff had made a *prima facie* showing[11] of specific jurisdiction.[12] In reaching this conclusion, we held that certain of the plaintiff's assertions—accepted by the district court for purposes of the jurisdictional analysis in *Bullion*[13]—bore directly on the existence of specific jurisdiction in that case: (1) defendant Gillespie, a California physician, shipped drugs directly to plaintiff Bullion in Texas; (2) these drugs proximately caused Bullion's injuries; and (3) the alleged tort "*took place in whole or in part in Texas.*" 895 F.2d at 217 (emphasis added).[14]

In *Arkwright Mut. Ins. Co. v. Transportes de Nuevo Laredo S.A. de C.V.,* 879 F.Supp. 699 (S.D.Tex.1994), the court considered a factual scenario bearing some similarity to that in the present

<blockquote>
THE COURT: But nothing was said at the time of the accident as to who was going to bring it in or whether it would be transferred to another carrier?

[Counsel for Felch]: That was always negotiated in Nuevo Laredo upon arrival.

THE COURT: Okay ..."
</blockquote>

[11]Because the facts in *Bullion* were disputed, and because the district court ruled on defendant Bullion's motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the party seeking to invoke the jurisdiction of the district court, plaintiff Bullion, bore the burden "of establishing contacts by the nonresident defendant sufficient to invoke the jurisdiction of the court." 895 F.2d at 216-17; *see also Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir.1994). In satisfying this burden, Bullion "need[ed] only present facts sufficient to constitute a prima facie case of personal jurisdiction." 895 F.2d at 217 (citation omitted); 20 F.3d at 648 (citation omitted).

[12]Both parties acknowledged that the facts in *Bullion* did not present a general jurisdiction claim and that the court's jurisdiction hinged entirely on the nonresident defendant's "relationship to the alleged tort *in Texas.*" 895 F.2d at 216 (emphasis added).

[13]We observed in *Bullion* that, "[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." 895 F.2d at 217.

[14]This Court also observed that: (1) Bullion was Gillespie's patient for purposes of the drug program; (2) Gillespie received compensation for her services; (3) Gillespie maintained regular telephone contact with Dr. Reeves, Bullion's local urologist, who implemented Gillespie's prescribed medical treatment; and (4) Gillespie administered to the needs of other patients in Texas, as well. *Id.*

case. *Arkwright* involved a claim for negligence and breach of contract. The defendant in *Arkwright,* Transportes de Nuevo Laredo (Transportes), a carrier of goods incorporated in Mexico, was hired to transport pallets of machinery parts from Pueblo, Mexico, to Nuevo Laredo, Mexico. Transportes "completed all of its contractual obligations in this matter by delivery of the trailer to its yard in Nuevo Laredo, Tamps., Mexico and performed no services of any type in Texas." *Id.* at 700.[15] According to the plaintiff, the pallets of machinery parts, loaded in good condition in Pueblo, Mexico, were damaged somewhere between Pueblo and South Carolina. Both Transportes and the United States transportation company hired to transport the pallets from Laredo, Texas, to South Carolina were named as defendants. In considering Transportes' motion to dismiss this case for lack of personal jurisdiction, the court held that:

> "Specific jurisdiction arises when the defendant has undertaken some activities in the forum state and plaintiff's claim arises out of or results from those activities. Such does not appear to be the case here. The undisputed evidence indicates that Transportes' handling of this cargo commenced and ended in the Republic of Mexico. Plaintiff's cause of action in this case does not arise out of the Texas contacts which it relies upon to establish jurisdiction." *Id.* at 700.

As in *Arkwright,* and in contrast with *Bullion,* the facts here do not suffice to sustain jurisdiction over Lar-Mex on the instant claim on a specific jurisdiction basis.

II. General Personal Jurisdiction

Turning to general personal jurisdiction (general jurisdiction), this Court must determine whether Lar-Mex's contacts with Texas are both "continuous and systematic." *See Helicopteros,* 466 U.S. at 414 & n. 9, 104 S.Ct. at 1872 & n. 9. This Court may find general jurisdiction to attach even in the absence of specific jurisdiction. *See Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 779 (5th Cir.1986), *cert. denied,* 487 U.S. 1015, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987).

As noted above, *when the facts are not in dispute,* we review *de novo* a district court's

---

[15]According to the affidavit of Carlos Luis Hinojosa, offered as primary support for Transportes' motion to dismiss for lack of jurisdiction, a transfer company retained by the plaintiff's agents was responsible for moving the shipment (including the trailer) from Transportes' yard in Nuevo Laredo, through Mexican and United States customs, and to a yard in Laredo, Texas. At that point, a United States transportation company took possession of the trailer and hauled it to its final destination in South Carolina. *Id.*

determination that its exercise of personal jurisdiction over a nonresident defendant is proper. *Bullion,* 895 F.2d at 216. However, "where ... the alleged facts are disputed,[16] "the party who seeks to invoke the jurisdiction of the district court bears the burden of establishing contacts by the nonresident defendant sufficient to invoke the jurisdiction of the court.' " *Id.* at 216-17 (quoting *WNS, Inc. v. Farrow,* 884 F.2d 200, 203 (5th Cir.1989)). Pertaining to this burden, it is well established that where the district court rules on a motion to dismiss for lack of jurisdiction without conducting an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case of jurisdiction. *See Wilson v. Belin,* 20 F.3d at 648. However, this Court has recognized that "deposition testimony or evidence adduced at a hearing under Fed.R.Civ.P. 12 or at trial might mandate a different conclusion." *Bullion,* 895 F.2d at 217. In *Travelers Indem. Co. v. Calvert Fire Ins. Co.,* 798 F.2d 826 (5th Cir.1986), *modified on rehearing in unrelated part,* 836 F.2d 850 (5th Cir.1988), this Court held that, with regard to the plaintiff's burden of proof in responding to a motion to dismiss for lack of jurisdiction, "Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at a trial." *Id.* at 831 (citation and footnote omitted); *see also DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1270-71 & n. 12 (5th Cir.1983) (only where the district court decides a motion to dismiss for lack of personal

---

[16]Lar-Mex contends that, at the time when the district court denied Lar-Mex's motion to dismiss for lack of personal jurisdiction, the facts in evidence before the court were "uncontroverted." Lar-Mex correctly notes that the evidence before the district court consisted of the following: (1) the transcript of Garcia's deposition, (2) the deposition of Luis Ramon Balmori Macbeth (Balmori) and (3) the testimony of Felch. Balmori, a commandante of the Mexican federal highway police, gave deposition testimony regarding the accident report which documented the fatal collision underlying Felch's causes of action, and also concerning the status of the official investigation of Clemente Velasquez, Lar-Mex's driver. Felch testified solely regarding his mother's professional background, the nature of the relationship he had enjoyed with his mother, and the content of the accident report, which was written in Spanish. Observing that the *interpretation* of this evidence before the district court was disputed, Lar-Mex nevertheless maintains that "[t]hose three pieces of evidence in no way contradict each other, and are therefore uncontroverted." According to Felch, however, the facts which may be distilled from these pieces of evidence are very much in dispute. We conclude that the evidence is essentially undisputed; to the extent of any actual conflicts in the evidence, we resolve these in favor of appellee, as we do also any choice of reasonable inferences to be drawn from the evidence; we likewise credit the nonconclusional factual allegations of the complaint to the extent those are not controverted by any of the evidence; however, the facts thus arrived at must be sufficient to affirmatively show personal jurisdiction, where, as here, that has been properly challenged.

jurisdiction without an evidentiary hearing may the plaintiffs satisfy their burden by presenting a *prima facie* case for jurisdiction); *Rano v. Sipa Press, Inc.,* 987 F.2d 580, 587 n. 3 (9th Cir.1993) ("If the trial court holds an evidentiary hearing or the case proceeds to trial, [ ] the burden on the plaintiff shifts to the preponderance of the evidence").

In the present case, the district court did convene and afford an evidentiary hearing concerning Lar-Mex's motion to dismiss for lack of personal jurisdiction.[17] Ultimately, however, whether or not an evidentiary hearing was held is irrelevant to our disposition of this appeal.

---

[17]In an order dated June 29, 1994, the district court advised the parties that a hearing would be held on July 29, 1994, and that "[c]ounsel shall at that time be prepared to address Defendant's Motion to Dismiss." Felch contends that the July 29, 1994, hearing was not an evidentiary hearing because no evidence was actually presented. However, the transcript of this hearing reveals that the district court on several occasions opened the door to the presentation of evidence.

> The court initiated the July 29 hearing by asking counsel for Lar-Mex, "What is the story?" Once counsel clarified that the issue before the court was whether or not the court possessed personal jurisdiction over the defendant, the following exchange occurred:

> "THE COURT: What have you got?

> [Counsel for Lar-Mex]: I believe they have the burden of proof. We have—as evidence?

> THE COURT: I'm not saying you need to have evidence, but I'm saying what is—it is your motion to dismiss. They have got to, you know, they have got to retain it here. But what do you have, since it is technically your motion? Then I'm going to shift it to them."

> This established, the parties advanced their respective arguments concerning the court's jurisdiction. In the course of presenting his argument, counsel for Felch specifically referred to the deposition testimony of Raymon Garcia; this reference comported with Felch's reliance, in his Opposition to the Motion to Dismiss, on Garcia's deposition testimony, excerpts from which were attached to Felch's Opposition to the Motion to Dismiss. Similarly, counsel for Lar-Mex stated at the hearing that an expert witness would testify on a particular point. Moreover, the court asked on several occasions whether the parties had "anything further" to bring to the court's attention. For example, following a discussion of whether or not the shipment involved in the accident was destined for the United States, and how this shipment was going to be transported across the border between the United States and Mexico, the court stated, "I think I have got basically what I need, but certainly, Counsel, if you have anything else to discuss, I will be glad to." And, approaching the conclusion of the hearing, the court asked the parties, "... [I]s there anything additional you want to bring to my attention?" If either party had any additional evidence to put before the court regarding personal jurisdiction, this hearing certainly afforded them the opportunity to do so.

11

Appellant properly raised the issue of personal jurisdiction and submitted evidence, including Garcia's entire deposition. As the plaintiff prevailed below, we apply the approach stated in *Bullion, viz:*

> "[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Id.* 895 F.2d at 217.

Similarly, all reasonable inferences from the facts thus established are drawn in favor of the prevailing plaintiff. However, the facts thus arrived at must be sufficient to *affirmatively* show personal jurisdiction. We hold the facts as thus ascertained fail to establish that Lar-Mex's contacts with Texas were so "continuous and systematic" as to subject it to the general jurisdiction of Texas courts, state or federal. *See Helicopteros,* 466 U.S. at 414 & n. 9, 104 S.Ct. at 1872 & n. 9 (due process requires that there be "continuous and systematic" contacts between the forum state and the nonresident defendant to support an exercise of general jurisdiction in that forum).

This Court has considered the requirement of "continuous and systematic" contacts, and it is wholly clear that the thus ascertained contacts between Lar-Mex and Texas do not satisfy that requirement. In *Wilson v. Belin,* 20 F.3d 644 (5th Cir.1994), this Court held that:

> "We simply cannot say that because of these various brief contacts with Texas that either of these defendants should have reasonably expected to be sued in Texas on any matter, however remote from these contacts. They simply were not substantial enough to give rise to such an expectation. Neither Blakely nor Belin conducted regular business in Texas. They never made all or even a substantial part of their business decisions in Texas, did not hold directors' meetings in Texas, and did not maintain their files in Texas." *Id.* at 650-51 (footnote and citation omitted).

In *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370 (5th Cir.1987), we elaborated on what "conducting" business entails—albeit in a manufacturing/distribution, and not shipping, context—in a particular forum:

> "[D]istributors selling Beech manufactured products for their own account do not create minimum contacts sufficient to warrant general jurisdiction over Beech. Beech has no office in Texas, has no agents in Texas, and has no control over the Texas dealers. As such, Beech is not "doing business' in Texas." *Id.* at 376 (citation omitted).

Additionally, in *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773 (5th Cir.1986), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987), this Court found "continuous and

12

systematic" contacts where: (1) the defendant attended college and was formerly employed in the forum; (2) the defendant owned real estate in the forum; (3) the defendant traveled frequently to the forum; and (4) the defendant conducted a great deal of business in the forum. *Id.* at 779. Moreover, in recognizing that those contacts rose to the level of "continuous and systematic," we recognized that each of those contacts alone would not support general jurisdiction. *Id.*[18]

In the present case, Felch failed to provide any evidence, at the July 29, 1994, hearing or otherwise, that Lar-Mex's transportation of goods across the border and into Laredo, Texas, was sufficiently substantial such that the exercise of jurisdiction on a general jurisdiction basis comported with the requirements of the due process clause.

Finally, the district court's decision in *Arkwright Mut. Ins. v. Transportes de Nuevo Laredo,* 879 F.Supp. 699 (S.D.Tex.1994), is instructive in the context of general jurisdiction, as well. In *Arkwright,* the court considered the contacts between the nonresident defendant and Texas, and concluded that these contacts were insufficient to support general jurisdiction:

> "The certificate from the Texas Railroad Commission is of little effect. "Applying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another.' There is no evidence that Transportes [the nonresident defendant] operated any of the trucks in Texas, much less that any such truck had any connection with the incident in question. Similarly, Transportes' hiring of attorneys to represent it in this case cannot support the exercise of jurisdiction in Texas.
>
> The fact that some of the merchandise which Transportes brings to Nuevo Laredo,

---

[18]In *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260 (5th Cir.1983), a Mississippi resident, injured when vapors from the paint he was spraying in the course of his work at a shipyard in Biloxi, Mississippi, caught fire, brought suit in the Mississippi federal court against, among others, Woolsey Marine, a New York corporation that had manufactured the allegedly defective paint. Although Woolsey carried on no activities in Mississippi, Woolsey admitted "that it sold its products to various Mississippi entities at its New Orleans office, and most important, that it shipped these products into Mississippi. Thus ... this is not a pure "stream of commerce' case...." *Id.* at 1271. We held that this sufficed *prima facie* for jurisdiction, even though the volume and number of shipments to Mississippi was not shown. However, we expressly recognized that at a preliminary hearing it might be shown that the volume of shipments was so *de minimis* as to preclude jurisdiction, *id.* at 1271 n. 13, and that "[e]ventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial." *Id.* n. 12. Plaintiff here has had the full opportunity to produce evidence showing jurisdiction. We further note that *DeMelo* was handed down before *Helicopteros* and appears to be a specific, rather than a general, jurisdiction case, although the opinion does not discuss jurisdiction in those terms or expressly recognize or distinguish between those two concepts.

13

Mexico is ultimately destined for the United States is also insufficient ... The fact that Transportes is insured by an Illinois company through a policy sold by a Mexican agent furnishes no jurisdictional contacts with Texas. Finally, the undefined "communications' with Hiser, Inc. are virtually meaningless. There is no evidence as to when or where these communications occurred. In any event, simply communicating with a Texas resident is not a purposeful availment of the privilege of conducting activities in Texas such as to invoke the benefits and protections of Texas law." *Id.* at 700-01 (citations omitted).

Among the facts established by Garcia's deposition testimony were the following: (1) Lar-Mex is a corporation incorporated in Monterrey, Mexico; (2) none of Lar-Mex's offices are located in the United States; (3) Lar-Mex does not have any representatives or employees in the United States; (4) Lar-Mex is not licensed in the United States to operate as a motor carrier; (5) Lar-Mex picks up no merchandise in Texas; (6) Lar-Mex does not advertise in Texas; it does not carry a yellow page advertisement in Texas; (7) Lar-Mex does not have a telephone line in Texas or anywhere else in the United States, although its name does appear in the Laredo, Texas, telephone book within the section relating to Nuevo Laredo, Mexico; (8) Lar-Mex does lease trailers from at least one United States company; (9) there is no evidence that the trailer which was involved in the fatal accident underlying this lawsuit was leased from a United States company; (10) Lar-Mex will enter into an agreement to transport a trailer across the border between the United States and Mexico and drop it off in Laredo, Texas;[19] (11) when Lar-Mex enters into an agreement to drop off a trailer in Laredo, Texas, payment for such "crossing" is received by Lar-Mex in Mexico; and, (12) there is no evidence that Lar-Mex had contracted to transport the shipment involved in this accident into Texas. Therefore, in light of the decisions cited above, Lar-Mex's contacts with Texas were not so "continuous and systematic" as to support the district court's exercise of general jurisdiction.[20]

---

[19]In his deposition, Garcia was asked, "So, sometimes Lar-Mex will drop the trailer and leave the trailer in Nuevo Laredo; and other times when the customer will pay for it, you'll bring the trailer into Laredo itself?" Garcia responded affirmatively. Felch failed to present any additional evidence on this point, and so there was no evidence before the district court quantifying or otherwise elaborating on the "other times" in which Lar-Mex would deliver trailers in the United States.

[20]As Felch failed to establish sufficient "minimum contacts" with Texas, we need not address whether the exercise of personal jurisdiction in this case would offend traditional notions of fair play and substantial justice. *See Asahi Metal Ind. v. Superior Court,* 480 U.S. 102, 119-21, 107 S.Ct. 1026, 1036, 94 L.Ed.2d 92 (1987); *Bearry,* at 377. However, we observe that this case

14

## Conclusion

For the foregoing reasons, we reverse the district court's exercise of personal jurisdiction and entry of judgment against Lar-Mex, and we render judgment dismissing this suit for want of personal jurisdiction.

REVERSED and RENDERED.

---

stems from an accident that occurred in Mexico, involving a Mexican corporation and a decedent who had been "living" and practicing medicine in Mexico. Moreover, it is unclear whether a Mexican court would recognize the district court's assertion of jurisdiction under these circumstances.