**MID CITY BOWLING LANES & SPORTS PALACE, INC.,**

v.

**IVERCREST, INC. d/b/a Diversey River Bowl.**

**Civil Action No. 98–2058.**

United States District Court, E.D. Louisiana.

Feb. 10, 1999.

Cary Joseph Deaton, Metairie, Arthur Devereau Dupre, Jr., Brian Eugene Sevin, Daigle, Sullivan, Dupre & Aldous, Metairie, LA, for Mid City Bowling Lanes & Sports Palace Inc.

David C. Treen, Duris Lee Holmes, Charles F. Seemann, III, Deutsch, Kerrigan & Stiles, New Orleans, LA, Lloyd L. Zickert, Scott W. Smilie, Law Offices of Lloyd L. Zickert, Chicago, IL, for Ivercrest Inc.

## ORDER AND REASONS [1]

BERRIGAN, District J.

This matter comes before the Court on Defendant's IVERCREST, INC. ("Ivercrest") motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Ivercrest contends that it lacks adequate contacts with the state of Louisiana sufficient to justify the exercise of personal jurisdiction by this Court. Having considered the memoranda of counsel, the record, and the applicable law, the Court GRANTS Defendant's motion.

## BACKGROUND

### A. MID CITY AND TRADEMARK "ROCK 'N' BOWL"

Plaintiff MID CITY BOWLING LANES ("Mid City") operates a bowling alley in the city of New Orleans, Louisiana. The majority of its customers are presumably residents of the New Orleans area. In addition to providing all of the services and equipment necessary to enjoy the sport of bowling, Mid City also offers live musical entertainment several nights each week. Customers can visit Mid City both to bowl and to listen to the musical entertainment. Beginning in October of 1989, Mid City began to use the phrase "Rock 'N' Bowl" to advertise the fact that patrons could enjoy a few games of bowling while listening to their favorite local artists, a combination that was at that point fairly unique in the bowling industry.

In August of 1991, Mid City made application to the U.S. Trademark Trial and Appeal Board to register the mark "Rock 'N' Bowl." In August of 1994, Mid City received a federal registration for the mark. During the registration process, however, Rock 'N' Bowl, Inc., a California corporation, filed an objection and claimed a prior use of the mark dating back to December, 1982. Mid City assigned any rights it then had in the mark back to the California company, which in turn licensed back to Mid City the exclusive rights to the mark in a limited geographical area. In 1996, Rock 'N' Bowl, Inc. assigned the balance of its rights in the mark to Mid City, which assignments vested in Mid City the prior use of the mark "Rock 'N' Bowl" enjoyed by the California corporation since December of 1982.

### B. DIVERSEY RIVER BOWL

Ivercrest operates the Diversey River Bowl in the city of Chicago, Illinois. This alley is presumably predominantly used by Chicago area residents. Since September of 1988, Ivercrest has used the phrase "rock-n-bowl" in its advertising for the Diversey River Bowl. The company used this phrase to advertise the entertainment services offered at the alley above and beyond bowling. These advertisements were only distributed locally in Chicago, mainly in the area's telephone directories. Ivercrest never sought to trademark the phrase "Rock 'N' Bowl."

In the fall of 1997, Diversey River Bowl set out to create a web page for the Internet. To that end, they hired Mindex Corporation, an Illinois corporation, to obtain a domain name and create the actual website.[2] Mindex registered the domain name "rocknbowl.com" for the Diversey River Bowl with InterNIC/Network Solutions, Inc. (NSI) on February 3, 1998.[3] On this same date, the website for Diversey River Bowl became operational and the pages on its site became available to all Internet users.[4]

---

1. Paul A. Turner, a third-year law student at Tulane Law School, assisted in the research and preparation of this decision.

2. Internet domain names are akin to telephone numbers, in that they are unique phrases which route an Internet user to a specific website on the Internet. A "website" is an Internet address which permits users to exchange digital information with a particular host. *Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295, 297 n. 1 (S.D.N.Y.1996), *aff'd*, 126 F.3d 25 (2d Cir.1997).

3. Internet domain names are very important to organizations seeking to use the Internet because there is nothing akin to an Internet telephone book where all of the domain names are indexed. *Haelan Products, Inc. v. Beso Biological Research, Inc.*, 43 U.S.P.Q.2d 1672, 1673 n. 1, 1997 WL 538731 (E.D.La.1997) (BERRIGAN, J.) ("A domain name mirroring a corporate name may be a valuable corporate asset, since it facilitates communication with customers").

4. Ivercrest attached copies of the webpages available on its website as part of its brief. *See* Affidavit of Ronald J, Ehemann, Exhibit A. The

## C. MID CITY'S CEASE AND DESIST LETTER

In April of 1998, Mid City became aware of the Diversey River Bowl website. On April 24, 1998, Mid City's attorney sent a letter to Ivercrest, asking that they cease and desist from using the website and the phrase "Rock 'N' Bowl" because of Mid City's exclusive registration. On May 21, 1998, Ivercrest's attorney returned a letter to Mid City stating that the Diversey River Bowl would no longer use the mark "Rock 'N' Bowl." On July 15, 1998, Mid City filed suit in this court alleging trademark infringement and unfair trade practices (among other things) against Ivercrest for their use of Mid City's registered mark. In August of 1998, Ivercrest informed Mindex that the "rocknbowl.com" website was to be removed from the Internet. Mindex removed the main index webpage. Over the next several weeks, certain pages of the formerly created site were still available on the site. However, as of September 19, 1998, all pages related to "rocknbowl.com" had been removed by Mindex from the Internet at Ivercrest's request.

## DISCUSSION

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case supported by sufficient facts to establish that jurisdiction is proper." *Mieczkowski v. Masco Corp.*, 997 F.Supp. 782, 784 (E.D.Tx.1998) (citing *Wilson v. Belin*, 20 F.3d 644 (5th Cir.1994), *cert. denied*, 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994)). In its consideration of the motion, the Court may use affidavits, depositions, or "any combination of recognized methods of discovery." *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753 (5th Cir.1996).

The Fifth Circuit has found personal jurisdiction to be made up of two components: (1) amenability to jurisdiction, meaning a party is within the substantive reach of the forum's jurisdiction under substantive law; and (2) service of process, meaning the physical means by which the jurisdiction is asserted.

*DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1264 (5th Cir.1983). In this matter, defendants do not contest the physical serving of process; rather, they assert the applicable law does not allow for this Court to exercise personal jurisdiction. The decision over which substantive law governs depends upon whether this controversy arises under federal law or diversity. Plaintiff alleges that the Lanham Act, 15 U.S.C. § 1051 *et seq.* is the basis for its complaint. In this situation, "defendant[s][are] amenable to the personal jurisdiction of a federal court to the same extent permitted a state court in the state where the federal court sits." *DeMelo*, 711 F.2d at 1264.

The consideration as to whether a federal court in Louisiana has jurisdictional reach over a nonresident defendant is a two-part inquiry. *Id.* (citing *Smith v. DeWalt Products Corp.*, 743 F.2d 277, 278 (5th Cir. 1984)). To satisfy the first step, the law of the forum state must allow for the exercise of personal jurisdiction. *Jobe*, 87 F.3d at 753. To satisfy the second part, the exercise of personal jurisdiction under the state law must comport with the Due Process clause of the United States Constitution. *Id.* In this situation, whether the plaintiff even has a claim within the reach of the Louisiana long-arm statute is questionable. The state long-arm statute, La.Rev.Stat. 13:3201 (West 1998), defines where personal jurisdiction can be exercised over a nonresident defendant:

> A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident: ... (3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state; and (4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods

---

pages contained the address and local phone number only of the facility. The material also contained more detailed information regarding

the facilities, pricing at the establishment, and party/entertainment options which the facility offered. *Id.*

used or consumed or services rendered in this state.

The undisputed facts presented in this case cause this Court to believe the plaintiff has not even satisfied the elements which would enable this Court to exercise personal jurisdiction under the long-arm statute. The plaintiff's complaint makes very general allegations that Diversey's use of the "Rock 'n' Bowl" mark has caused injury and confusion to Mid–City. However, common sense and logic dictate that the services being sold by each entity cannot, and do not, overlap and coincide to the point where confusion or damage would occur.

Bowling is an activity which is enjoyed on a local or regional basis. It is very difficult for this Court to conceive of a situation where, from February 1998 through September 1998, New Orleans area bowling enthusiasts perhaps used the Internet to connect to "www.rocknbowl.com", read the information which had been contained therein, and chose to travel the 929.8 miles to Chicago in the belief that they were only able to enjoy the "Rock 'n' Bowl" music/bowling experience in Chicago.[5] This Court believes that, as a practical matter, bowlers will and do frequent those establishments which are located closest to their homes, and there would not be any confusion between alleys located in New Orleans and Chicago which could cause injury to either party. Thus, this Court has great difficulty in seeing where an injurious act was committed in this state, or that defendant engaged in regular and consistent solicitation and activity within Louisiana which would cause this action to be brought under this Court's jurisdiction.

The Court does note, however, that Louisiana's long-arm statute extends to the full limits of due process, which limits the Court's inquiry into whether the exercise of personal jurisdiction would comport with due process. *Bean Dredging Corp. v. Dredge Technology Corp.,* 744 F.2d 1081, 1083 (5th Cir.1984).

"The exercise of personal jurisdiction over a nonresident defendant comports with due process when two requirements are met."

*Felch v. Transportes Lar–Mex Sa De CV,* 92 F.3d 320, 323 (5th Cir.1996). First, the nonresident defendant must have "purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with that state." *Id.* (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 315–17, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Second, the exercise of jurisdiction over the nonresident must not "offend 'traditional notions of fair play and substantial justice.' " *Felch,* 92 F.3d at 323 (quoting *Asahi Metal Industry Co. Ltd. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

The first prong of the personal jurisdiction analysis is divided into two sub-parts, specific or general jurisdiction, either of which may be found in order to establish minimum contacts. *Dickson Marine, Inc. v. Panalpina, Inc.,* 961 F.Supp. 947, 950 (E.D.La.1997). "Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Mieczkowski,* 997 F.Supp. at 784 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). General jurisdiction exists when the action does not arise out of the contacts with the state, but rather the defendant has "continuous and systematic" contacts with the state which reasonably justify exercising jurisdiction. *Id.* (citing *Hall,* 466 U.S. at 414 n. 9, 104 S.Ct. 1868). The Fifth Circuit has held that general jurisdiction may be found despite the lack of specific jurisdiction. *Felch,* 92 F.3d at 327. Plaintiff has not specified whether it believes personal jurisdiction exists under specific or general jurisdiction, so the Court will analyze its claim under both views.

*Specific Jurisdiction*

In the Fifth Circuit, specific personal jurisdiction should only be exercised when the injuries underlying the litigation were due to "injuries arising out of or related to the nonresident's contacts with the forum

---

5. In keeping with the spirit of technology which this matter raises, travel and distance information was obtained using the Internet at

<http://www.yahoo.com/r/mp/>. This site was visited on January 28, 1999.

state." *Felch,* 92 F.3d at 324 (citing *Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1068 (5th Cir.1992), *cert. denied,* 506 U.S. 867, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992)). In this matter, Plaintiff alleges injuries based on Defendant's use of its registered mark on an Internet website available to computer users throughout the country and in Louisiana. Aside from this general allegation, Plaintiffs make only a passing reference to Defendant being mentioned in a nationally available periodical as the basis for injuries directed by Defendant towards Plaintiff in Louisiana.[6] The Court finds these allegations insufficient to establish specific jurisdiction over Defendant. There are no other facts offered by Plaintiff which show that Defendant Ivercrest had *any* contact with Louisiana other than the website's availability to Louisiana computer users.

*General Jurisdiction*

The Court must decide whether the contacts between nonresident Defendant and Louisiana are "continuous and systematic" so as to justify finding general personal jurisdiction. *Felch,* 92 F.3d at 327. The Fifth Circuit has generally held a finding of general jurisdiction requires a greater amount of contact with a forum state than must exist under specific jurisdiction. *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 374 (5th Cir.1987). The inquiry into the extent of the nonresident defendant's contacts with the forum state is multi-faceted, with a number of distinct factors being considered:[7] "Considerations such as the quality, nature, and extent of the activity in the forum, the foreseeability of consequences within the forum from activities outside it, and the relationship between the cause of the action and the contacts, relate to whether it can be said that the defendant's actions constitute purposeful availment." *Dickson Marine,* 961 F.Supp. at 951 (quoting *Hydrokinetics Inc. v. Alaska*

*Mechanical, Inc.,* 700 F.2d 1026, 1028 (5th Cir.1983), *cert. denied,* 467 U.S. 1257, 104 S.Ct. 3549, 82 L.Ed.2d 851 (1984)). Some of the undisputed factors present in this matter which militate towards finding no personal jurisdiction include:

(1) Ivercrest has no offices or employees in Louisiana.

(2) Ivercrest offers no goods or services for sale in Louisiana.

(3) Ivercrest is not licensed or authorized to conduct business in Louisiana.

(4) The only contact between Ivercrest and Mid City occurred as a result of the website's construction and has been via telephone calls and the exchange of letters and facsimile transmissions.

(5) The only method through which Louisiana residents could be aware of Diversey River Bowl's existence was through the Internet, but the existence of the website is not enough to establish sufficient contacts for purposes of personal jurisdiction.[8]

*Internet Advertisements*

The question of whether a website on the Internet alone can justify a finding of personal jurisdiction has become a popular conundrum for the federal courts in the past few years. The Fifth Circuit has yet to definitively address the question, but a recent district court opinion within the Fifth Circuit sheds helpful light on the subject. In *Mieczkowski,* Judge Folsom of the Eastern District of Texas reviewed several of the national cases which discussed the issue of the Internet and personal jurisdiction. 997 F.Supp. at 785–788. He used three analytical categories first put forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997), for analyzing websites in relation to personal jurisdiction.

---

**6.** Whether the Defendant has advertised in nationally available publications is disputed by the parties. At this time, the Court makes no factual finding as to whether this allegation is true or not.

**7.** Since there has been no evidentiary hearing on the matter of personal jurisdiction, the plaintiff must satisfy the burden of asserting a *prima facie*

allegation of jurisdiction. *Bearry,* 818 F.2d at 376. However, the Court believes that plaintiff has failed to meet even this low burden through the filed pleadings and documents.

**8.** This factor merits the included discussion of Internet advertising and whether it alone is enough to establish personal jurisdiction.

(1) Websites which use the Internet for entering into contracts, downloading of files, and exchanging of information between consumers and the company. *Mieczkowski,* 997 F.Supp. at 786. Courts will almost always find general jurisdiction with these types of sites. *Id.* (citing *CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996)).

(2) Websites which allow for some interactivity between consumer and seller, but not to the level of making sales or exchanging files. *Mieczkowski,* 997 F.Supp. at 786. These sites are the most difficult for courts to categorize, and decisions about whether they are enough to justify personal jurisdiction are best accomplished by analyzing the " 'level of interactivity and commercial nature of the exchange of information ....' " *Id.* (quoting *Zippo Mfg. Co. v. Zippo Dot Com,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997)).

(3) Mere advertisement on the Internet via a passive website, i.e. the consumer and the seller have no direct contact and exchange no information. The website is generally just information which the consumer can choose to review or not. *Mieczkowski,* 997 F.Supp. at 786. These types of websites generally are not enough to justify personal jurisdiction. *Id.* (citing *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y.1996), *aff'd,* 126 F.3d 25 (2d Cir. 1997)).

Reviewing Defendant's website, the Court believes it falls into the last category. The site was created much like an expanded advertisement, with the different types of activities and services available at Diversey River Bowl being highlighted. Additionally, the company listed its address, its *local* phone number only and a small map on where it was located in Chicago. Internet users could not purchase any items over the website, nor could they communicate directly with the Defendants through the website. All inquiries which anyone, regardless of their location, might have about Defendant's business had to be answered via the telephone.

The Court finds that Plaintiff has failed to meet its burden of establishing "minimum contacts" by either specific or general jurisdiction. In addition, for the same reasons the Court found that the Louisiana long-arm statute does not reach this defendant, it finds that the exercise of jurisdiction over Ivercrest would not comport with "traditional notions of fair play and substantial justice."

Accordingly,

IT IS ORDERED that Defendant Ivercrest's Motion to Dismiss for Lack of Personal Jurisdiction is hereby GRANTED. Judgment will be entered in favor of the defendant and against the plaintiff, dismissing plaintiff's claims without prejudice.