Dora L. **BONNER**, Plaintiff,

v.

**TRIPLE-S MANAGEMENT CORPORATION,**
Defendant.

CIVIL ACTION NO. 3:15-cv-279

United States District Court,
S.D. Texas, Galveston Division.

Signed 01/25/2016

Dora L. Bonner, Attorney at Law, Clute, TX, for Plaintiff.

Jocelyn A. Holland, McLeod Alexander et al., Houston, TX, Genevieve Bacak McGarvey, McLeod Alexander Powel Apffel PC, Galveston, TX, for Defendant.

## MEMORANDUM OPINION

GEORGE C. HANKS, JR., UNITED STATES DISTRICT JUDGE

Dora Bonner sued Defendant, Triple-S Management Corporation in the 149th Judicial District of Brazoria County, Texas. Bonner's lawsuit alleges she had a contractual relationship with a Puerto Rican company, Triple-S Management Corporation. Bonner alleged that Triple-S had promised that it "would transfer certain funds" to her account, and that it had failed to do so. As evidence of that contract, Bonner attached a document signed by Bonner and countersigned by "Eugenio Cerra, Jr." and

"Ramon Ruiz" on behalf of "Triple-S Management Corp."

Triple-S filed a special appearance in state court, and then removed the action to this court. Dkt. 1. Essentially, in both state and federal court, Triple-S has contended that Bonner's contract was not signed by anyone who actually worked for Triple-S, and that she is instead the unfortunate victim of an involved and sophisticated scheme in which someone used the corporate name of Triple-S to induce Bonner to send them money. Accordingly, Triple-S moved to dismiss the lawsuit under Rule 12(b)(2), attaching affidavit evidence to show that Triple-S is not a Texas resident, does not conduct business in Texas, has no contacts with Texas, and does not maintain an agent for service of process in Texas. Additionally, Triple-S presented evidence in the form of affidavits stating that it had never done business with Bonner and that the document forming the basis of Bonner's suit was not generated or agreed to by Triple-S. Triple-S also produced detailed affidavits stating that it did not manage funds or solicit business in the manner Bonner described, it did not take any of the actions Bonner alleged it to have taken, and that the email addresses Bonner used to communicate with the alleged "Triple-S" agents were not valid Triple-S emails addresses. Finally, Triple-S produced affidavits from its Human Resources department stating that many of the names and titles that appeared in the documents upon which Bonner relied were not Triple-S employees or positions. Accordingly, Defendant Triple-S asked this Court to dismiss Bonner's lawsuit for lack of personal jurisdiction. Dkt. 10.

Bonner contends that Triple-S has "purposefully availed itself of the benefits and protections of the law of [Texas.]" Dkt. 4, 17. She pointed to the contract that formed the basis of her lawsuit, as well as "numer-ous phone calls" and "numerous emails" she alleges that Triple-S made or sent to her. She points out that "Ramon Ruiz" is one name that appears to have countersigned the contract she sues upon, and she alleges that "Ramon Ruiz was the Chief Executive Officer of Triple-S Management Corporation until December 31, 2015." Further, Bonner points to other data points that she has discovered that she contends connects Triple-S sufficiently to Texas for the exercise of personal jurisdiction in this case, including an "affiliation" with BlueCross Blue Shield, purchasing the stock of a corporation domiciled in Texas, and allowing a corporate subsidiary to purchase Long Term Bonds issued by the various Texas entities. To shore up these contentions, she attaches unverified documents that she has apparently taken from the Internet.

The Court held a hearing on the motion to dismiss, and Bonner presented evidence on the question of Triple-S's jurisdictional contacts. After the hearing, the Court entered an Order granting Triple-S's motion to dismiss for lack of personal jurisdiction. Dkt. 21. Although the Court is not required to state its findings of fact or conclusions of law when ruling on a motion under Rule 12, in fairness to the parties, the Court will set forth its reasons for granting the motion to dismiss. However, the Court will deny Bonner's pending request for a "More Definite Statement" under the Texas Rules of Civil Procedure.

## RELEVANT LAW

Under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir.2008). "It is well established that where the district court rules on a motion to dismiss for lack of jurisdiction

without conducting an evidentiary hearing, the plaintiff may bear his burden by presenting a prima facie case of jurisdiction." *Felch v. Transportes Lar–Mex SA DE CV*, 92 F.3d 320, 326 (5th Cir.1996) (citations omitted). However, when, as here, the Court holds an evidentiary hearing the plaintiff must establish jurisdiction by a preponderance of the evidence. *Id.*

■ "A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir.2009). The Texas long-arm statute extends to the limits of due process. *Id.* To satisfy due process, the plaintiff must demonstrate "(1) that the non-resident purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.' " *Johnston*, 523 F.3d at 609.

### ANALYSIS

■ "A defendant establishes minimum contacts with a state if 'the defendant's conduct and connection with the forum state are such that [he] should reasonably anticipate being haled into court there.' " *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 379 (5th Cir.2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). "There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir.2001). A court has general jurisdiction over a nonresident defendant "to hear any and all claims"

against him when his contacts with the state are so " 'continuous and systematic' as to render [him] essentially at home in the forum." *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011). At the hearing and in her pleadings, Bonner essentially conceded that there is no evidence to support an argument that Triple-S has contacts that give rise to general jurisdiction. Accordingly, the Court now turns to whether there is any evidence that Triple-S has sufficient contacts to support specific jurisdiction over it.

■ "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction." ' *Id.* at 2851 (citation omitted). The Fifth Circuit frames the specific jurisdiction issue with a three-step analysis:

(1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 433 (5th Cir.2014) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir.2006)). The plaintiff bears the burden of satisfying the first two prongs; if the plaintiff is successful, the burden shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable. *Seiferth*, 472 F.3d at 271. The main question is "whether there was 'some act by which the defendant purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State,

thus invoking the benefits and protections of its laws.'" *Goodyear*, 131 S.Ct. at 2854 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). The Supreme Court recently stated that "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, —— U.S. ——, 134 S.Ct. 1115, 1121, 188 L.Ed.2d 12 (2014).

■ Based upon the evidence presented at the hearing and in the record, the Court finds that Bonner has failed to demonstrate that Triple-S has sufficient contacts to support the exercise of specific jurisdiction over it in this case. First, the Court inquires whether Triple-S purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there. Bonner alleges that Triple-S signed a contract with her. Triple-S flatly denies ever doing so. Bonner alleges that Triple-S communicated with her numerous times by telephone and email. Triple-S admits that it contacted Bonner by email, after she claimed that she had a contract with it, in order to investigate the origin of her claims, but denies the remainder of the alleged communications. Bonner also alleges that Triple-S has some incidental contacts with Texas, including ownership of bonds and stocks issued by Texas entities. The Court finds that Triple-S's affidavits, which deny that it entered into a contract with Bonner or that it initiated contact with Bonner, are the more credible evidence here.

The next step in the inquiry is for the Court to examine whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts. Because the Court has found that Triple-S did not actually have the contacts that Bonner alleges give rise to her cause of action, the Court finds that this step also weighs in favor of Triple-S.

Finally, the Court turns to whether the exercise of personal jurisdiction over Triple-S is fair and reasonable. Under these facts, it is not.

## CONCLUSION

The Court does not question the sincerity of Bonner's belief that she was indeed contracting with, and sending money to, a fully authorized representative of an actual Puerto Rican corporation. In fact, leaving aside the conclusory allegations in either side's affidavits, the Court notes that the facts sworn to do not necessarily conflict. Instead, all of the sworn facts can fit be together as a coherent story, but one that unfortunately reveals that Bonner was not in contact with the actual Defendant in this case.

This Court does not have personal jurisdiction over Triple-S in this lawsuit.