Nancy **TORRES DE MAQUERA,** surviving spouse of Pedro Maquera, deceased and a/n/f of Grisney Maquera De Torres, minors, Christiam Caldas and Victor Cisneros, Plaintiffs,

v.

**YACU RUNA NAVIERA S.A.,** Ravenscroft Shipping, Inc., Linea Amazonica Peruana, S.A., and Agencia Naviera Maynas, S.A., Defendants.

No. Civ.A. G–99–366.

United States District Court,
S.D. Texas,
Galveston Division.

Aug. 1, 2000.

Dennis M McElwee, Schechter and Marshall, Houston, TX, for Nancy Torres De Maquera, plaintiffs.

Kenneth D Kuykendall, Royston Rayzor et al, Houston, TX, for Yacu Runa Naviera S.A., defendants.

### ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AND DEFENDANTS AGENCIA, NAVIERA, AND RAVENSCROFT'S MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiffs bring this claim against Defendants for personal injuries arising under the Jones Act and general maritime law. The injuries allegedly occurred on June 14, 1999 while Plaintiffs were working aboard the M/V YACU RUNA. Now before the Court are three Motions: (1) a Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendant Linea Amazonica Peruana, S.A. ("Linea"); (2) a Motion to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim, or for Summary Judgment, filed by Defendants Naviera Yacu Runa, S.A. ("Naviera"), Agencia Naviera Maynas, S.A. ("Agencia"), and Ravenscroft Shipping, Inc. ("Ravenscroft"); and a Motion to Dismiss on the basis of Forum Non Conveniens filed by all Defendants. For the reasons stated below, each Motion is **DENIED.**

## I. FACTUAL SUMMARY

The events detailed in this Opinion have left one man dead and have rendered two other sailors permanently impaired. On June 14, 1999, the M/V YACU RUNA, a vessel owned by Defendant Naviera and bareboat chartered to Defendant Linea, was steaming toward the Port of Houston to deliver a regular shipment of cargo. That day, three Peruvian sailors, Pedro Maquera, Victor Cisneros, and Christiam Caldas, had been in the process of gas freeing a tank on board the vessel when a sudden, terrible explosion tore through their work area. Sadly, the explosion had a disastrous result. Mr. Maquera died on the scene, and Mr. Cisneros and Mr. Caldas, both of whom suffered third-degree burns over a majority of their bodies, were evacuated by helicopter to Galveston to receive immediate medical attention. Mr. Cisneros and Mr. Caldas spent the next two months in Galveston undergoing treatment for their injuries. Because of the explosion, it appears likely that their sea careers have come to a premature end. On June 18, 1999, Cadet Caldas, Mr. Cisneros, and Nancy De Maquera, the surviving spouse of seaman Pedro Maquera, filed suit.

## II. MOTION TO DISMISS

### A. Standard of Review

The Federal Rules of Civil Procedure authorize a court, upon suitable showing, to dismiss any action or any claim within an action for failure to state a claim upon which relief can be granted. *See* FED. R.CIV.P. 12(b)(6). When considering a motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint, and views them in a light most favorable to the plaintiff. *See Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993). Unlike a motion for summary judgment, a motion to dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of her claims that would entitle her to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

### B. Personal Jurisdiction

Defendants first argue that the exercise of personal jurisdiction is improper. Defendants Linea, Naviera, and Agencia all are Peruvian companies each with a principal place of business outside of Texas. Defendant Ravenscroft is a Florida corporation. Together, Defendants assert that their contacts with Texas are so limited as to justify dismissal pursuant to FED. R.CIV.P. 12(b)(2), on the grounds that this Court lacks personal jurisdiction over them.

■ In federal court, personal jurisdiction over a nonresident defendant is proper when: (1) the defendant is amenable to service of process under the forum state's long-arm statute, and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *See Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir.1992). The Texas long-arm statute authorizes service of process on a nonresident defendant if the defendant is determined to be "doing business" in Texas. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 17.042. Because the phrase "doing business" has been interpreted to reach as far as the United States Constitution permits, the jurisdictional inquiry under the Texas long-arm statute collapses into a single due process inquiry. *See Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir.1993); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356–57 (Tex.1990).

■ Whether the exercise of personal jurisdiction over Defendant is consistent with the Due Process Clause of the United States Constitution likewise requires a two-pronged inquiry. First, the Court must conclude that Defendant has "minimum contacts" with Texas. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Second, the Court must determine that requiring Defendant to litigate in Texas does not offend "traditional notions of fair play and substantial justice." *Id.; see also Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.1994); *Ruston*, 9 F.3d at 418. The "minimum contacts" aspect of due process can be satisfied by either finding general jurisdiction or specific jurisdiction. *See Wilson*, 20 F.3d at 647. For general jurisdiction, the defendant's contacts with the foreign state must be both "continuous and systematic" and "substantial." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984); *Villar*, 990 F.2d at 1496. Plaintiffs, however, argue that this case turns on specific jurisdiction.

■ Specific jurisdiction exists over a non-resident defendant if the defendant has " 'purposely directed' his activities at the residents of the forum, and the litigation results from alleged injuries that 'arise from or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The critical inquiry for specific jurisdiction, therefore, concerns whether the defendant, by directing activities to the

forum state, purposefully availed itself of the privilege of conducting activities within the forum state, thereby "invoking the benefit and protection of its laws." *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. at 2182. Ultimately, the defendant's connection with the forum state must be of such a nature that the defendant should reasonably anticipate being haled into court in that state. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir.1986). But a single contact with the forum state can be sufficient to support specific jurisdiction. *See Ruston*, 9 F.3d at 419. Moreover, the Court notes that although Plaintiff has the burden, he need only make a prima facie showing of jurisdiction, and his allegations in that regard are to be taken as true unless controverted; moreover, conflicts are to be resolved in Plaintiff's favor. *See Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 785 (5th Cir.1990).

### 1. *Defendants' Contacts*

Because Plaintiffs contend that this action arises out of contacts Defendants have had with the State of Texas, the Court must determine whether there exists a proper basis for concluding that specific jurisdiction attaches. Given that four different Defendants assert separate objections to personal jurisdiction, the Court evaluates their individual contacts with the Texas forum in turn.

### a. *Defendant Linea*

 Defendant Linea characterizes its contacts with the Texas forum as virtually nonexistent and alleges that this case is not governed by the specific jurisdiction standard. The Court disagrees. By evaluating the facts in a light most favorable to

Plaintiffs, the Court finds that Plaintiffs' claims *are* in fact directly related to Defendant Linea's contacts with Texas, such that the specific jurisdiction prong has been satisfied.

For the Court, the critical consideration rests on deciding whether Defendant Linea purposefully availed itself to the benefits and protections of the Texas forum. When the M/V YACU RUNA, which, at the time, had been bareboat chartered by Defendant Linea, exploded one-hundred fifty miles off the coast of Galveston, the vessel was en route to the Port of Houston both to deliver a regular shipment of cargo to contracted customers in Texas and to on-load a separate shipment of Texas-based products—all pursuant to a bill of lading governed by American law.[1] In fact, the charter agreement between Defendants Linea and Naviera denotes Houston, Texas as a port or place of redelivery. *See Pls.' Resp. to Defs. Naviera Yacu Runa, S.A.'s, Agencia Naviera Maynas, S.A.'s, and Ravenscroft Shipping, Inc.'s Mot. to Dismiss Ex. C.* Therefore, at the time of their injuries, Plaintiffs were acting in furtherance of Defendant Linea's financial activities and contractual obligations in Houston. *See Roth*, 942 F.2d at 621 (noting that to satisfy the purposeful availment requirement, defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business with the forum state).

Because Plaintiffs' claims have a direct causal relationship with the shipping activities Defendant Linea purposefully directed toward the Texas forum, the Court concludes that Texas may assert specific jurisdiction over Defendant Linea.[2] Put differently, "but for" Defendant Linea's

---

1. These contracts brought the M/V YACU RUNA to the Port of Houston at least five times in the nine months proceeding the date of the explosion. To facilitate all of its business activities in Texas, Defendant Linea maintains an agent in Texas who advertises in Texas on behalf of Defendant Linea. *See Pls.' Resp. to Linea Amazonica Peruana, S.A.'s Mot. to Dismiss for Lack of Personal Jurisdiction Ex. C* (listing Barwil Agencies, Inc. as Defen-

dant Linea's Houston-based business representative).

2. In connection with both the accident and the shipment of its cargo to Texas, Defendant Linea called upon the United States Coast Guard to transport Plaintiffs from the M/V YACU RUNA to Galveston. Defendant Linea received additional benefits from the Texas forum, namely: employees aboard the vessel

contacts with customers in Texas, the M/V YACU RUNA would not have been steaming toward Texas, and Plaintiffs would not have suffered injury. *Cf., e.g., Prejean v. Sonatrach, Inc.,* 652 F.2d 1260, 1270 n. 20 (5th Cir.1981). Defendant Linea's assertion that the "minimum contacts" inquiry may only be satisfied in this case under a general jurisdiction analysis is respectfully rejected.[3]

Ultimately, the strong connection between Plaintiffs' causes of action and Defendant Linea's contacts with Texas demonstrates that Defendant Linea is not being haled into this Court solely as a result of "random, fortuitous or attenuated" contacts over which it had no control. *Burger King Corp.,* 471 U.S. at 476, 105 S.Ct. at 2184. Given these factual underpinnings, the Court finds that Defendant Linea has purposely availed itself of the privilege of conducting shipping activities in Texas, thereby meeting the requirements for specific jurisdiction under the first prong of *International Shoe* and its progeny.

b. *Defendant Naviera*

■ As owner of the M/V YACU RUNA, Defendant Naviera claims that the

received immediate medical treatment in Galveston hospitals; the vessel made initial repairs in Texas waters following the explosion; the vessel was detained for inspection by Texas-based officials at the Port of Houston–Galveston following the explosion.

**3.** Defendant Linea's reliance on *Felch v. Transportes Lar–Mex S.A. De CV,* 92 F.3d 320 (5th Cir.1996) is unpersuasive. In that case, the Fifth Circuit dismissed the plaintiff's claims based on lack of personal jurisdiction because: (1) the automobile accident occurred in Mexico; (2) the victim died in Mexico; and (3) any negligence occurred in Mexico. *Id.* at 324. The facts in the present case are completely distinguishable. First, the explosion occurred off the coast of Texas—not in another country. Second, Mr. De Maquera died in a Galveston hospital (funeral arrangements were made in Texas) and the other two Plaintiffs spent nearly two months in Texas medical facilities. Third, as employees of Defendant Linea, the connection between their claims and Defendant Linea's contacts in Texas is far less remote than was the connection

Court should not impute Defendant Linea's Texas contacts to it, because Defendant Linea, not Defendant Naviera, controlled the vessel's movements at the time of Plaintiffs' accident. Plaintiffs adamantly challenge Defendant Naviera's assertion, claiming that the issue of "control" over the M/V YACU RUNA remains unresolved. While recognizing that Defendant Naviera entered a bareboat charter with Defendant Linea, which at first glance would appear to absolve the owner from liability, the Court also notes that Defendant Naviera had actual knowledge that Defendant Linea would be conducting business in the Port of Houston—the normal run for the M/V YACU RUNA occurred between Houston and Iquitos. *See Pl.'s Resp. To Defs.' Mot. to Dismiss Ex. C* (designating Houston, Texas as a port or place of redelivery in the charter signed by Defendants Linea and Naviera). It therefore was not fortuitous that the vessel ended up in the Southern District of Texas. Indeed, Defendant Naviera had overseen M/V YACU RUNA's route, so as to be reasonably put on notice that it might be called upon to defend actions in Texas. *Cf. Ruston,* F.3d at 420 (noting that in the

in *Felch* between the defendant and Texas. In *Felch,* the defendant was conducting operations not directly connected to the Texas forum. In this case, however, the accident occurred while the M/V YACU RUNA was attempting to reach Houston for business purposes. Specific jurisdiction, therefore, arises because Plaintiffs' injuries resulted from Defendant Linea's activities in the Texas forum—namely, its delivery and receipt of goods at the Port of Houston.

Likewise, the Court rejects Defendant Linea's application of *Asahi* to this case. Plaintiffs do not argue a "stream of commerce" theory. Rather, the business activities Defendant Linea conducted with Texas residents explains M/V YACU RUNA's presence off the coast of Texas. The explosion occurred while Plaintiffs were transporting goods to Houston, in furtherance of Defendant Linea's business transactions with Texas residents. Viewing the case through this lens, the Court finds that specific jurisdiction attaches.

context of COGSA, the Fifth Circuit has conferred specific jurisdiction when the evidence shows that a vessel owner was aware, at the time it entered its charter contract, that the charterer intended to take the ship to Louisiana); *Loftin v. Maritime Overseas Corp.*, No. A94–011–CIV (JWS), 1994 WL 750603, at *2 (D.Alaska June 27, 1994) (finding specific jurisdiction against a vessel owner because that defendant "knew full well" that the ships, which had been chartered to a third party, would sail to Valdez, Alaska to deliver and onload crude oil). Moreover, it remains to be seen whether Defendant Naviera exercised decision making control regarding the movement and condition of the vessel at the time of the explosion, the bareboat charter to Defendant Linea notwithstanding.

Although the parties take opposing positions regarding the capacity of each Defendant to control the vessel at the time of the accident, Plaintiffs have adduced enough evidence to meet their burden under the first prong of the *Shoe* jurisdictional analysis.

### c. *Defendant Agencia*

■ Defendant Agencia contends that because it served merely as "agent of disclosed principal Linea," Defendant Linea's contacts with Texas cannot be imputed to Defendant Agencia. The Court remains unclear how much of a role Defendant Agencia had in the operation of the vessel; what is certain, however, is that Defendant Agencia had some control. Without more evidence from Defendant Agencia to support its position, the Court is at this time unprepared to categorically state that Texas lacks jurisdiction over it.

The evidence submitted by Plaintiff supports the conclusion that Defendant Agencia has failed to meet its burden. Apparently, representatives from Agencia traveled to Texas and conducted business in the State of Texas—directly connected to the M/V YACU RUNA's voyages to and from the Port of Houston. As agent, Agencia managed the vessel within the United States, purchasing supplies and goods for the vessel. *See Defs. Naviera, Agencia, and Ravenscroft's Mot. to Dismiss at 4* ("[Agencia] had certain contacts with the State of Texas in connection with arranging for cargo to be carried onboard the M/V YACU RUNA" at the time of the accident). In that capacity, Defendant Agencia also arranged for and oversaw repairs, performed budgeting and accounting work, and hired crew members. *See id.* at 3. In the Court's view, this constitutes the transaction of business in the United States, especially if Plaintiffs prevail in showing at trial that Defendant Agencia acted not only as an agent for Defendant Linea, but also exercised control over the operation of the vessel at the time of Plaintiffs' injuries. If proven, then Defendant Agencia, as manager of the M/V YACU RUNA, purposefully availed itself of goods and services sold by U.S. companies. *See Warn v. M/Y Maridome,* 961 F.Supp. 1357, 1358 (S.D.Cal. 1997), *aff'd,* 169 F.3d 625 (9th Cir.1999). Because Defendant Agencia is alleged to have transacted business in Texas as an independent operator—business that may be related to the cause of the explosion that ripped through the M/V YACU RUNA—Plaintiffs have adduced sufficient evidence such that they have carried their burden against Defendant Agencia under the first prong of the jurisdictional analysis.

### d. *Defendant Ravenscroft*

■ Defendant Ravenscroft describes itself as a Florida-based corporation that served as a "technical manager" for Defendant Linea during the time in question. As such, Defendant Ravenscroft claims that Defendant Linea's contacts with Texas are irrelevant in the personal jurisdiction inquiry of Defendant Ravenscroft. Plaintiffs disagree, arguing that Defendant Ravenscroft actually operated the vessel at the time of the accident. Once again, the Court is not prepared to make a definitive

ruling on the nature of Defendant Ravenscroft's relationship vis-a-vis Defendant Linea, but the evidence supplied by Plaintiffs indicates that Defendant Ravenscroft may have been operating the M/V YACU RUNA when the vessel exploded. *See Pls.' Resp. to Defs. Naviera Yacu Runa, S.A.'s, Agencia Naviera Maynas, S.A.'s, and Ravenscroft Shipping, Inc.'s Mot. to Dismiss Ex. C* (indicating that in the ship particulars Defendant Ravenscroft is listed as "operator" and that in the ship overview Defendant Ravenscroft is named as manager of the vessel without any mention of Defendant Linea). In fact, Plaintiffs point to evidence indicating that Defendant Ravenscroft may have had responsibility for controlling the vessel's movement, implementing its safety procedures, communicating with authorities on behalf of the vessel, and conducting inspections of the vessel before and after the explosion. *See Pls.' Resp. to Defs.' Mot. to Dismiss on the Basis of Forum Non Conveniens at 4* (claiming that during the vessel's voyage "[a]ll communications from the Master of the vessel were sent to Ravenscroft in the United States" and that throughout the trip the United States Coast Guard was directed to send all correspondence to Defendant Ravenscroft's offices in the United States). This certainly raises the specter that Defendant Ravenscroft could be held liable under general admiralty law for the injuries sustained by Plaintiffs. Accordingly, the Court finds, at least for the time being, that specific jurisdiction attaches to Defendant Ravenscroft.

### 2. *Fair Play and Justice*

■ The Court further concludes that the exercise of jurisdiction over Defendants would not offend "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. To satisfy the Constitution, there must exist a sufficient relationship between the defendant and the forum state that it would be "reasonable ... to require the corporation to defend the particular suit which is brought there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). In evaluating the reasonableness issue, the Court looks to the burden on the defendant, the interests of the forum state, the judicial system's interest in efficient resolution, the plaintiff's interests in obtaining relief, and the shared interest of the several states in furthering "fundamental substantive social policies." *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987).

■ In this case, Texas clearly has an interest in adjudicating a dispute involving the safety of vessels traveling to and from the Port of Houston. The provision of medical services to the injured seaman took place in Texas, and United States resources were required to rescue the stranded crew aboard the M/V YACU RUNA. Later, officials from the Port of Houston–Galveston detained the M/V YACU RUNA to investigate the cause of the accident. Umpteen man hours and tremendous sums of public money were expended as result of this accident. In the Court's view, Texas has a strong interest in presiding over the dispute.

And while it will be a burden on Defendants to litigate the action in Texas, it would likewise be a burden on Plaintiffs to prosecute the action in South America, for many of the witnesses and applicable documents are located in Texas. Moreover, in light of the fact that Defendants are corporations that engage in high-dollar commerce with customers in Houston and throughout the world, it is hard for the Court to find it too burdensome for Defendants to litigate this claim in a Texas forum. *See Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183 ("[B]ecause 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for

disputes relating to such activity.") (quoting *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)).

After careful consideration of the totality of the circumstances, the Court concludes that personal jurisdiction exists over each of the Defendants in this action and that the exercise of jurisdiction over them would be consistent with Constitutional requirements. Accordingly, Defendants' Motions to Dismiss for Lack of Personal Jurisdiction are hereby **DENIED.**

## C. *Dismissal or Summary Judgment for Failure to State a Claim*

Defendants Agencia, Naviera, and Ravenscroft also seek dismissal pursuant to Federal Rules of Civil Procedure 12(b)(6)—or summary judgment—for failure to state a cause of action, because these parties claim they played no role in the operation of the M/V YACU RUNA at the time of the explosion. As the Court has already discussed, Plaintiffs have submitted ample evidence squarely contradicting Defendants' claims that only Defendant Linea controlled the vessel on June 14, 1999. If Plaintiff prevails in meeting its burden of persuasion at trial, each Defendant may ultimately face liability.

Even in the case of a bareboat charter, the owner remains liable for the unseaworthiness condition of the vessel that existed at the time of the charter, *see Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 183 & n. 11 (5th Cir.1981), as well as for injuries caused by defects in the vessel that existed prior to the commencement of the charter, *see Haskins v. Point Towing Co.*, 421 F.2d 532, 536 (3d Cir.1970). Because Plaintiffs challenge the seaworthiness of the M/V YACU RUNA prior to the time Defendants Naviera and Linea entered their charter agreement, claims against Defendant Naviera survive 12(b)(b) scrutiny.

Plaintiffs also allege that Defendants Ravenscroft and Agencia operated the vessel in an independent capacity at the time of the accident. Under general maritime law a vessel operator is held strictly liable if the unseaworthiness of a ship proximately causes a seaman's injuries. *See Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co.*, 376 U.S. 315, 326 n. 2, 84 S.Ct. 748, 755 n. 2, 11 L.Ed.2d 732 (1964); *Eskine v. United Barge Co.*, 484 F.2d 1194, 1196 (5th Cir. 1973). Because the level of control exercised by Defendants Ravenscroft and Agencia remains an open-ended question ripe for resolution, the Court elects not to act on the Rule 12(b)(6) Motion, and instead instructs the parties to pursue this issue at trial.

For the foregoing reasons, Defendants' Agencia, Naviera, and Ravenscroft's Rule 12(b)(6) Motion to Dismiss, or in the Alternative a Motion for Summary Judgment, is **DENIED.**

## D. *Forum non Conveniens*

Defendants also seek dismissal of this action under the doctrine of *forum non conveniens*, which allows a court to decline to exercise its jurisdiction where it appears that, for the convenience of the parties and in the interests of justice, the action should be tried in another forum. The ultimate issue in a *forum non conveniens* analysis is where the case should be tried in order to best serve the convenience of the parties and the interests of justice. *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947); *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 827 (5th Cir.1986). Determining what location is convenient requires a balancing of a number of private and public interest factors, none of which is dispositive. *See Syndicate 420*, 796 F.2d at 827. The defendant, however, bears the burden of convincing the Court that dismissal of the action is warranted.

The first step in a *forum non conveniens* analysis involves a determina-

tion of whether there exists an adequate and available foreign forum. A foreign forum is available when the entire case and all of the parties can come within the jurisdiction of that forum; the forum is adequate if the parties will be treated fairly and will not be deprived of all remedies. *See id.* at 828–30. Here, Defendants contend the courts in Peru are available and appropriate forums. Plaintiffs do not strenuously challenge the availability or adequacy of a Peruvian forum. Accordingly, the Court will presume that an adequate and available forum for this dispute exists in Peru—although it remains to be seen whether Plaintiffs could recover wage claims under 46 U.S.C. § 10313(I) (1994) if the case were brought in Peru.

If an adequate forum is available, the Court must then balance the public and private factors outlined by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) and *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). "The plaintiff's choice of forum is entitled to great weight in the balancing of factors, and unless the balance strongly favors the defendant[ ], the plaintiff's choice of forum should not be overturned." *Syndicate 420*, 796 F.2d at 830.

■■■ The private factors to be considered in a *forum non conveniens* analysis relate to the convenience of the parties, and include

the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability [sic] of a judgment if one is obtained.

*Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843 (superseded by 42 U.S.C. § 1404(a)); *see Cowan v. Ford Motor Co.*, 713 F.2d 100, 103 (5th Cir.1983) ("[T]he doctrine of fo-

rum non conveniens, as set out in *Gilbert*, remains good law so long as the possible alternative forum is a state or foreign court"). The public factors relevant to a *forum non conveniens* analysis include

the administrative difficulties caused by crowded dockets, the burden of imposing jury duty on citizens of a forum with no relation to the dispute, the local interest in having localized controversies decided in that locality, and the appropriateness of deciding diversity cases in the forum whose law provides the substantive rules of decision.

*Villar v. Crowley Maritime Corp.*, 780 F.Supp. 1467, 1484 (S.D.Tex.1992), *aff'd*, 990 F.2d 1489 (5th Cir.1993); *see also Syndicate 420*, 796 F.2d at 831.

■■■ Here, the private factors weigh in favor of retaining the action. The evidence and witnesses in this case will likely be scattered between Peru and Texas. Thus, a trial in either location will present certain difficulties in obtaining the attendance of witness, and necessarily will be burdensome and problematic to one of the parties. However, the doctrine of *forum non conveniens* should not be invoked simply to shift the inconvenience from one party to another. The Court therefore must evaluate the nature of the underlying action.

■■■ The action pending before the Court centers around personal injuries suffered by sailors working aboard a vessel traveling to the Port of Houston. Thus, all the relevant witnesses testifying as to the facts surrounding the accident likely will be parties, American and Peruvian doctors, members of the United States Coast Guard, or employees of Defendants (who, the ·Court recognizes, mostly live in Peru). Because most of the Peruvian witnesses will be either Defendants or employees of Defendants, the Court is confident that Defendants will be able to ensure their attendance at trial or otherwise present their testimony. With regard to all of Defendant's Peruvian employees, the

Court reminds all parties that it "vigorously exercises its authority under FED. R.EVID. 403 and 611(a) to ensure that each witness's testimony is as concise as possible and that cumulative and redundant testimony is kept to a minimum[,]" thereby restricting the time that the witnesses are absent from their jobs to an "absolute minimum." *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F.Supp. 1392, 1397 (1992). Moreover, the Court liberally construes Federal Rule of Civil Procedure 32 to allow depositions wherever convenient. In the end, even if Defendants had contended it would be burdensome to secure the presence of Peruvian witnesses if the trial were conducted in Texas, they have provided this Court with insufficient evidence to support this allegation.

The Court also recognizes that Plaintiffs' proof regarding the condition of the vessel lies in the testimony to be given by officials living in the United States, including members of the United States Coast Guard who detained the M/V YACU RUNA in order to conduct an investigation of the vessel. Moreover, one of the largest sources of contention between the parties will be damages. All of Plaintiffs' physicians and damages experts reside in Houston. In fact, $582,000 of the $602,000 in Plaintiffs' total medical expenses was incurred in Galveston. Finally, much of the documentary evidence regarding the day-to-day operational control of the vessel arguably is in the possession of Defendant Ravenscroft in its United States offices— not in Peru. Combined, these factors certainly favor Texas as the more appropriate forum to resolve the dispute.

It therefore appears that conducting the trial in the Southern District of Texas will give all parties (including the American-based Defendant) relatively easy access to as much evidence and witnesses than would a trial in Peru. It likely will also minimize the expenses to the parties. Accordingly, the Court concludes that the private factors weigh in favor of maintaining the action in the Southern District of Texas, which will provide the most expeditious and inexpensive resolution of the case.[4]

The public factors likewise weigh in favor of maintaining the case in the Southern District of Texas. While this Court's docket is extremely crowded, the case is scheduled for trial in less than thirty days; dismissing the case would result in a substantial delay of its resolution. More importantly, this case is brought against Defendants that conduct regular business in Texas. The State of Texas therefore has a keen interest in the disposition of cases involving corporate entities doing business within its borders, a point completely overlooked by Defendants. To the extent that the laws of Peru may govern the dispute, this fact alone does not outweigh the other factors, which support keeping the case in the Southern District of Texas. While the Court firmly believes that federal admiralty law will likely govern this dispute, that issue need not be resolved at this time. Regardless of choice of law considerations, Peruvian law should be substantially similar to the laws of the United States, and the Court is confident it will properly apply whatever law is determined to be governing.

Therefore, after a careful consideration of both the public and private factors, the Court concludes that, in order to best serve the convenience of the parties and the interests of justice, Plaintiffs' action

---

4. The Court has carefully reviewed *Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876 (5th Cir.1987), and concludes that the case is distinguishable in five critical respects: the case at bar involves an American defendant; key documents regarding the condition of the vessel are located in the United States; no employment contract or collective bargaining agreement requiring Plaintiffs to settle all claims in Peru is at issue; at least one defendant maintains an agent in Texas who advertises in the State; there exists no dispute regarding the proper parties to bring suit in this case; and the Court has not imposed draconian time constraints on Defendants to litigate this action in the United States. *Cf. Hernandez v. Naviera Mercante, C.A.*, 716 F.Supp. 939, 945 (E.D.La.1989).

should not be dismissed. While trial in Texas will be somewhat burdensome to Defendants, a trial in Peru would be equally burdensome to Plaintiffs in terms of presenting all of their witnesses and evidence now located in the United States. It would also further no significant public or private interest. Accordingly, Defendants' Motion to Dismiss on Grounds of *Forum Non Conveniens* is hereby **DENIED**.

### III. CONCLUSION

After thoroughly reviewing the arguments presented, the Court concludes it has personal jurisdiction over all Defendants. Additionally, the Court finds sufficient evidence presented by Plaintiffs to overcome dismissal under either Rule 12(b)(6) or a summary judgment theory. Consequently, all Motions to Dismiss or Motions for Summary Judgment are **DENIED**. Finally, the Court holds that Defendants fail to demonstrate adequate grounds for dismissal on the grounds of *Forum Non Conveniens*. Accordingly, Defendants' Motions to Dismiss are **DENIED**.

The parties are **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider and the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**