**GRUPO TMM, S.A.B., TMM Logistics, S.A. de C.V., and Lacto Comercial Organizada, S.A. de C.V., Appellants,**

v.

**Juan Gerardo PEREZ, Elizabeth Carolina Perez, individually and as the Representative of the Estate of Xochitl Carolina Castillo Perez and the Estate of Xochitl Y. Perez Castillo, Christine Dolores Perez, Felipe Manuel Perez, Maria Delores Castillo, and Raymundo Peinado Bobadilla, Appellees.**

No. 14–09–01072–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 16, 2010.

Rehearing Overruled Dec. 9, 2010.

Alexander Christos Papandreou, Karen A. Conticello, David Stockel, Houston, for Appellants.

Joshua Rudy Leal, David W. Showalter, Richmond, for Appellees.

Panel consists of Justices FROST, BOYCE, and CHRISTOPHER.

## OPINION

KEM THOMPSON FROST, Justice.

This is an interlocutory appeal from the trial court's denial of the special appearances of three Mexican companies. Because we conclude that the trial court did not have personal jurisdiction over these parties, we reverse the trial court's judgment and remand with instructions to dismiss this suit for lack of personal jurisdiction.

### BACKGROUND

In August 2006, Xochitl Carolina Castillo de Perez and Xochitl Yvette Perez, both United States residents, were killed in an accident involving an eighteen-wheel tractor-trailer in Mexico. The tractor portion of the eighteen-wheeler was owned by appellant Lacto Comercial Organizada, S.A. de C.V. (Lacto), and the trailer portion of the eighteen-wheeler was owned by appellant TMM Logistics, S.A. de C.V. ("TMM"). Lacto and TMM are subsidiaries of Grupo TMM S.A.B. ("Grupo"), and all three are Mexican companies.

Appellees Juan Gerardo Perez, Elizabeth Carolina Perez, Individually and as the Representative of the Estate of Xochitl Carolina Castillo Perez and the Estate of Xochitl Y. Perez Castillo, Christine Dolores Perez, Felipe Manuel Perez, and Maria Delores Castillo, beneficiaries and representatives of the estates of the deceased, brought a wrongful death and survival action against Lacto, TMM, and Grupo (collectively, the "Mexican Companies") in Houston, Texas, alleging, among other things, that the driver was intoxicated and speeding. Appellee Raymundo Peinado Bobadilla also sued the Mexican Companies for personal injury and property damage he sustained in the accident. The beneficiaries and representatives of the deceased and Bobadilla are collectively referred to as the "Plaintiffs."

The Mexican Companies filed special appearances, which the trial court denied without written findings of fact and conclusions of law. In this interlocutory appeal, the Mexican Companies contend, in seven issues, that the trial court erred in denying their special appearances, based on either specific or general personal jurisdiction.

### ANALYSIS

#### A. Legal Framework

Whether a trial court has personal jurisdiction over a defendant is a question of law we review de novo. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010); *Nogle & Black Aviation, Inc. v. Faveretto*, 290 S.W.3d 277, 280 (Tex.App.-Houston [14th Dist.] 2009, no pet.). If, as in this case, the trial court does not issue findings of fact, we presume the trial court resolved all factual disputes in favor of its judgment. *Spir Star*, 310 S.W.3d at 871–72; *Nogle & Black*, 290 S.W.3d at 281. The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. *See Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex.2002). Once the plaintiff has pleaded sufficient jurisdiction-

al allegations, the defendant challenging personal jurisdiction bears the burden to negate all bases of jurisdiction alleged by the plaintiff. *See id.*

▇▇▇ The Texas long-arm statute governs Texas courts' exercise of personal jurisdiction over a nonresident defendant. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 17.041–.045 (West 2008). The long-arm statute reaches as far as federal constitutional due process will allow, and thus the long-arm statute is satisfied if an assertion of personal jurisdiction comports with due process. *See Spir Star,* 310 S.W.3d at 872; *Nogle & Black,* 290 S.W.3d at 281. Personal jurisdiction is proper when the nonresident defendant has established "minimum contacts" with the forum and the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Spir Star,* 310 S.W.3d at 872. For a defendant to have sufficient contacts with the forum, it is essential that the defendant's contacts show that the defendant purposefully availed itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of the forum's laws. *See Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784–85 (Tex.2005).

▇▇▇ A defendant's contacts can give rise to either general or specific jurisdiction. Specific jurisdiction exists when the claims in question arise out of or relate to the defendant's purposeful contacts with Texas. *Spir Star,* 310 S.W.3d at 874. For a nonresident defendant's contacts with Texas to support an exercise of specific jurisdiction, there must be a substantial connection between the defendant's purposeful contacts with Texas and the operative facts of the litigation. *Id.* In defending against the Mexican Companies' special appearances, the Plaintiffs asserted both specific and general jurisdiction. The trial court's order did not specify the

basis on which it relied in denying the special appearances, so we will analyze both.

## B. Pleading Defect

▇▇▇ The Plaintiffs argue that the trial court properly could have denied the Mexican Companies' special appearances because they were not properly sworn as required by Texas Rule of Civil Procedure 120a and therefore were defective. The Mexican Companies did file an affidavit to verify their special appearances, but the Plaintiffs claim the affidavit has several defects. Defects in a special-appearance affidavit can be cured by amendment. *Dawson–Austin v. Austin,* 968 S.W.2d 319, 322 (Tex.1998). The Plaintiffs did not raise this issue in the trial court, which would have given the Mexican Companies an opportunity to cure these alleged defects. The Plaintiffs cannot raise this argument for the first time on appeal. *See Int'l Turbine Serv. v. Lovitt,* 881 S.W.2d 805, 808 (Tex.App.-Fort Worth 1994, writ denied); *see also Haddad v. ISI Automation Int'l,* No. 04–09–00562–CV, 2010 WL 1708275, at *2 (Tex.App.-San Antonio Apr. 28, 2010, no pet.) (mem. op.). By failing to take necessary action in the trial court, the Plaintiffs effectively waived this complaint.

## C. No Specific Jurisdiction

In their first through fourth issues, the Mexican Companies generally assert that the trial court erred in finding personal jurisdiction and denying their special appearances. The Plaintiffs present no arguments supporting specific jurisdiction in their brief, and at oral argument, though they did not abandon specific jurisdiction, the Plaintiffs stated that they could not see a basis for specific jurisdiction in this case. We agree.

▇▇▇ To establish specific jurisdiction, the defendant's contacts with the fo-

rum must have a substantial connection to the operative facts of the litigation. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 584 (Tex.2007); *Markette v. X–Ray X–Press Corp.,* 240 S.W.3d 464, 467 (Tex.App.-Houston [14th Dist.] 2007, no pet.). In a similar case involving a truck accident in Mexico, the Fifth Circuit found no specific jurisdiction in Texas because (1) the fatal accident occurred in Mexico, (2) the decedents all died in Mexico, and (3) all negligence, if any, occurred in Mexico. *Felch v. Transportes Lar–Mex S.A. de C.V.,* 92 F.3d 320, 324 (5th Cir.1996). We agree with this analysis and find the trial court erred to the extent it denied the Mexican Companies' special appearances based on specific jurisdiction. We sustain the Mexican Companies' first through fourth issues to the extent they argue that they were not subject to personal jurisdiction based on specific jurisdiction.

### D. No General Jurisdiction

In their first through fourth and sixth issues, the Mexican Companies argue in part that that the trial court erred in finding they were subject to personal jurisdiction and denying their special appearances based on general jurisdiction. A general-jurisdiction inquiry involves a much more demanding minimum-contacts analysis with a much higher threshold. *See Am. Type Culture Collection, Inc.,* 83 S.W.3d at 807. The defendant's contacts must be continuous and systematic, establishing a general business presence in Texas. *See id.* at 809; *Alenia Spazio, S.p.A. v. Reid,* 130 S.W.3d 201, 220 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). It is the nature and quality of the contacts, not the quantity, that is critical when examining general jurisdiction. *Am. Type Culture,* 83 S.W.3d at 809–10.

#### 1. Lacto and TMM

Lacto and TMM are in the business of transporting cargo through the interior of Mexico and to the United States–Mexico border. Lacto owns 900 trucks used in its business and hires drivers to haul cargo in its trucks. Lacto owns some trailers and leases some from others, but the majority of the trailers Lacto uses to transport goods are leased from TMM. TMM owns 300 to 500 trailers, all of which are used by Lacto, and about 30 of its trailers go into Laredo, Texas, each day. It is the goal to have the trailers loaded with cargo destined for Mexico when they re-cross the border, and this cargo comes from customers all over the world.

Loads that are destined for the United States cross the border within a special zone that starts twenty miles from the border in Nuevo Laredo on the Mexican side and extends twenty miles past the border on the United States side into Laredo, Texas. Because of international border regulations, cargo trucks cannot simply cross the border into the United States. Rather, the cargo must go through a process called "drayage." During drayage, the company intending to physically cross the border with the items must complete necessary paperwork and then deliver the items across the border, where they are transferred to another company in the border zone to send to their ultimate destination. In the great majority of cases, Lacto's loads are unloaded in the Nuevo Laredo border zone, where an independent transfer company completes the drayage process. However, starting in late 2005 or 2006, Lacto made itself available to handle the drayage process but did so only when another transfer company was not available. Of Lacto's 500 trucks, 5 have the special permit from the United States government necessary to drive in the border zone for drayage. This permit allows only limited operation and

prohibits the trucks from leaving the border area. The number of times a Lacto truck crosses the border for drayage varies on any given day from none to two, six days per week.

Lacto and TMM do not have offices in Texas or own any property or maintain any bank accounts in Texas. Goods that are delivered into the border zone do not stay there but are delivered to final destinations worldwide. The record contains no evidence that Lacto or TMM have any customers in Texas, and they do not target Texas to solicit business. Neither Lacto nor TMM have any employees stationed in Texas, although frequently their employees have crossed the border for various reasons. From 2000 to 2006 for TMM and from 2006 to the present for Lacto, an employee crosses the border four to six times per week and drives around in the border zone looking for lost trailers. Sometimes employees cross the border specifically for this reason; at other times, they already have crossed for personal reasons and look for trailers while they are there. Until 2005, four high-ranking TMM employees went to meetings in Laredo one to five times per month to coordinate the logistics of deliveries, which, because of the intricacies of crossing the border, often required three to five parties to complete.

We find these contacts insufficient to establish general jurisdiction. The focus of Lacto's and TMM's businesses is moving cargo through the interior of Mexico and across the United States–Mexico border. They have no offices, employees, property, or bank accounts in Texas, and they do not target Texas companies for business solicitation. The Plaintiffs emphasize the volume of cargo loads entering Texas, which is about thirty per day. But, the mere flow of goods into or out of a state is insufficient to establish a general business presence necessary for general jurisdiction. *See Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 376 (5th Cir.1987); *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 171 (Tex.2007); *Reyes v. Marine Drilling Cos.*, 944 S.W.2d 401, 404 (Tex.App.-Houston [14th Dist.] 1997, no writ). That Texas is part of the stream of commerce through which the goods pass on their way to their ultimate destinations does not subject the transporter of those goods to general jurisdiction. *See Arkwright Mut. Ins. Co. v. Transportes de Nuevo Laredo S.A. de C.V.*, 879 F.Supp. 699, 701 (S.D.Tex.1994) (concluding that "[t]he fact that some of the merchandise which [the defendant] brings into Nuevo Laredo, Mexico is ultimately destined for the United States" is insufficient for general jurisdiction because a stream of commerce analysis is improper in the general jurisdiction context); *see also Spir Star*, 310 S.W.3d at 874 (noting that "stream-of-commerce analysis is relevant only to the exercise of specific jurisdiction; it provides no basis for exercising general jurisdiction over a nonresident defendant" (quotation omitted)). Courts have found no general jurisdiction in cases with many more goods flowing into and out of the forum than is present in the case under review.[1] Further, these cases

---

1. *See, e.g., Bearry*, 818 F.2d at 372–73, 375–76 (finding no general jurisdiction despite $250 million in products flowing into Texas over five years, $72 million in contracts for products manufactured in Texas, and more than $195 million in goods and services purchased from more than 500 Texas vendors); *PHC–Minden*, 235 S.W.3d at 168–71 (finding no general jurisdiction despite more than $1,500,000 in purchases from Texas vendors, among other contacts); *Am. Type Culture*, 83 S.W.3d at 807–10 (finding no general jurisdiction despite $350,000 in sales revenue per year to Texas, hundreds of patents per year for twenty years being stored in Texas, and purchases of $378,000 in supplies from thirty-

involve the defendant making profits directly from Texas entities,[2] and there is no evidence in this case that any Texas business or person is paying Lacto or TMM anything.

 The trips to locate trailers or to coordinate transactions are likewise insignificant for general jurisdiction. Trips attendant to insubstantial contacts are also insubstantial. *See Am. Type Culture*, 83 S.W.3d at 808 (stating that mere purchases and trips related thereto are insufficient to establish general jurisdiction); *Markette*, 240 S.W.3d at 468 n. 2 (noting that neither the attorney-client relationship with an out-of-state attorney nor routine correspondence and interactions attendant to that relationship are sufficient to confer personal jurisdiction). These contacts show no intent to exploit the Texas market. *See Alenia*, 130 S.W.3d at 217, 220. Indeed, there is no evidence whatsoever to show any targeting to Texas markets as opposed to Texas merely being a conduit of worldwide sales. *See Bearry*, 818 F.2d at 376. Thus, the cargo flowing to Laredo and the incidental contacts necessary to facilitate that flow do not establish general jurisdiction over Lacto or TMM. *See Martinez v. Servicios de Transportacion, M.G., S.A.*, Civil No. L–05–60, 2007 WL 543411, at *4 (S.D.Tex. Feb. 15, 2007) (finding that legal intricacies of border crossing requiring contacts with Texas are insufficient to support general jurisdiction over Mexican company whose business was moving goods to and from the border at Nuevo Laredo); *see also Primera Vista S.P.R. de R.L. v. Banca Serfin, S.A.*, 974 S.W.2d 918, 926 (Tex.App.-El Paso 1998, no pet.) (concluding that Mexican company's contacts with Texas that were necessary to facilitate its customers' business ventures in Texas were merely a by-product of its business in Mexico and were insufficient to support general jurisdiction).

The Plaintiffs also argue that general jurisdiction is proper over Lacto based on its drayage trips across the border. Again, we disagree. Lacto did not structure its business with the goal of crossing the border into Texas but does so only when there is no other option. Only 5 of its 900 trucks are even licensed to cross the border,[3] and the crossing is for the limited purpose of delivering goods into the border zone in Laredo. The nature and limited purpose of these contacts significantly diminishes the quality of these contacts for jurisdictional purposes. *See Alenia*, 130 S.W.3d at 218; *see also Am. Type Culture*, 83 S.W.3d at 809–10. The Fifth Circuit addressed similar facts in *Felch*, which involved a suit against a Mexican transportation service after its truck was in an accident in Mexico. 92 F.3d at 321. The *Felch* court rejected general jurisdiction even though the carrier made some drayage trips into Laredo because so much of its business was centered in Mexico and it was "wholly clear" that drayage trips did not establish continuous and sys-

---

three Texas vendors); *Reyes*, 944 S.W.2d at 402–05 (finding no general jurisdiction despite purchases of more than $183 million in goods in Texas from 471 sources, hundreds of contracts with Texas entities, and sales of more than $850,000 of scrap metal to Texas companies).

**2.** *See. e.g., Bearry*, 818 F.2d at 372–73, 375–76; *Am. Type Culture*, 83 S.W.3d at 807–10; *Reyes*, 944 S.W.2d at 402–05.

**3.** In conjunction with this licensing, Lacto obtained a business address in Laredo. The Plaintiffs do not dispute Lacto's assertion that it obtained this address after the suit was filed, and thus that contact is irrelevant. *See PHC–Minden*, 235 S.W.3d at 170.

tematic contacts with Texas. *See id.* at 327–29.[4]

Although Lacto and TMM have a large number of direct and indirect contacts with Texas, the contacts are of low quality. Viewed in the light most favorable to the judgment, these contacts are insufficient as a matter of law to support a finding of personal jurisdiction based on general jurisdiction. Thus, the trial court erred in denying the special appearances of Lacto and TMM.

### 2. Grupo

The Plaintiffs' theory of general jurisdiction against Grupo rests primarily on imputing the contacts of Lacto and TMM, its subsidiaries, to Grupo as their alter ego. In their fifth issue, the Mexican Companies argue that the trial court erred in finding that Grupo was the alter ego of Lacto and TMM. We need not address this argument because even if we impute Lacto's and TMM's contacts to Grupo, we have concluded those contacts are insufficient to establish general jurisdiction.

The Plaintiffs identify several independent contacts they claim Grupo has with Texas as a basis to support general jurisdiction against Grupo, even without imputing Lacto's and TMM's contacts. These, too, are insufficient to support general jurisdiction. The Plaintiffs stress that Grupo, through various subsidiaries, has been providing border-crossing services for years; but, as with Lacto and TMM, there is no evidence that Grupo provides any service to end-destination customers in Texas or targets Texas for business solicitation, and the flow of goods to Texas in the stream of commerce is irrelevant in the general jurisdiction context. *See Bearry,* 818 F.2d at 376; *Arkwright,* 879 F.Supp. at 701; *Spir Star,* 310 S.W.3d at 874; *Alenia,* 130 S.W.3d at 217, 220. The Plaintiffs point to contacts such as operating a railroad line into Texas, sending vessels into Texas, and having an office in Laredo, Texas, but there is no evidence that Grupo itself made these contacts as opposed to a subsidiary. Mere evidence that a subsidiary had these contacts is insufficient to impute the contacts to a parent. *See Spir Star,* 310 S.W.3d at 873–74; *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 799 (Tex.2002). Also, contrary to the Plaintiffs' assertion, Grupo's listing on the New York Stock Exchange provides no basis for general jurisdiction in Texas. *See Access Telecom, Inc. v. MCI Telecoms. Corp.,* 197 F.3d 694, 717 n. 6 (5th Cir.1999). Finally, the Plaintiffs assert that Grupo has been sued in Texas before and has not challenged personal jurisdiction, but the record is unclear as to what arguments were made in those other cases. Further, personal jurisdic-

---

4. The Plaintiffs cite several cases involving drayage or other border-crossing cases, but they all are distinguishable. In each of the cited cases, the defendant had additional significant contacts that are not present in the case under review. *See Summit Mach. Tool Mfg. Corp. v. Warren Transp., Inc.,* 920 F.Supp. 722, 726 (S.D.Tex.1996) (defendant solicited business in Texas and solicited and negotiated contracts in Texas); *Transportadora Egoba S.A. de C.V. v. Arredondo,* 217 S.W.3d 603, 608–09 (Tex.App.-San Antonio 2006, pet. denied) (defendant had a director living in Laredo, owned land in Laredo, filed suit in Laredo, and had bank account in Lare-

do); *Transportacion Especial Autorizada, S.A de C.V. v. Seguros Comercial Am., S.A. de C.V.,* 978 S.W.2d 716, 720–21 (Tex.App.-Austin 1998, no pet.) (many of defendant's shipments originated in Texas, defendant had bank account in Laredo, and it traveled to Texas to solicit business from Texas companies). The Plaintiffs also cite *Juarez v. United Parcel Serv. de Mexico S.A. de C.V.,* but that court did not decide whether the contacts satisfied general jurisdiction; instead, it decided that exercising jurisdiction would violate traditional notions of fair play and substantial justice. 933 S.W.2d 281, 285 (Tex.App.-Corpus Christi 1996, no writ).

tion is assessed on a case-by-case basis, so the existence or lack of personal jurisdiction in other litigation is not determinative. *See Am. Type Culture,* 83 S.W.3d at 810. These alleged individual contacts provide no support for asserting general jurisdiction against Grupo.

The trial court erred in denying Grupo's special appearance, based either on an alter-ego theory or direct contacts from Grupo.

### 3. Summary

The Mexican Companies are not subject to personal jurisdiction in this suit based on general jurisdiction. We sustain their first through fourth and sixth issues to the extent they argue they were not subject to personal jurisdiction based on general jurisdiction. Because we have determined that the Mexican Companies did not have sufficient contacts with Texas to establish personal jurisdiction, we need not address their seventh issue in which they assert that exercising jurisdiction over them offends traditional notions of fair play and substantial justice.

### CONCLUSION

As a matter of law, Grupo, Lacto, and TMM do not have sufficient contacts with Texas to establish personal jurisdiction based on either specific or general jurisdiction, and therefore the trial court erred in denying their special appearances. We reverse the trial court's judgment and remand with instructions for the trial court to dismiss this case for lack of personal jurisdiction.