**AFFIRMED and Opinion Filed September 22, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00182-CV**

**SHOCKTHEORY DLV, INC., Appellant**
**V.**
**TAVA VENTURES, INC., Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-03195-2020**

## MEMORANDUM OPINION

Before Justices Schenck, Smith, and Garcia
Opinion by Justice Garcia

ShockTheory, DLV, Inc. ("ShockTheory") brings this interlocutory appeal from the trial court's order denying its special appearance in a contract dispute with Tava Ventures, Inc. ("Tava"). In essence, ShockTheory argues that the evidence is legally and factually insufficient to support the trial court's implied fact findings because: (i) the court improperly admitted and relied on testimony from a witness who was not competent to testify, and (ii) ShockTheory's contacts with this state do not constitute purposeful availment.

Concluding that the trial court properly denied ShockTheory's special appearance because it did not meet its burden to negate the bases of jurisdiction, we affirm.

## I. BACKGROUND

On January 10, 2020, Tava, a Texas resident, and ShockTheory, a Georgia entity, entered a contract for ShockTheory to provide marketing and advertising services "for a period not to exceed one hundred twenty (120) days."[1]

ShockTheory continued to provide services after the one hundred twenty-day period expired and demanded payment. Tava instituted this declaratory judgment action requesting, among other things, a determination that the contract expired on its own terms.[2]

ShockTheory filed a special appearance supported by an affidavit from its Chief Executive Officer Sonja Williams (the "Williams Addidavit"). Tava's response to the Special Appearance was supported by the sworn declaration of Tava's Chief General Counsel, Jalene Mack (the "Mack Declaration").

The trial court conducted a hearing and the parties' contract was admitted into evidence. ShockTheory's counsel requested and was granted the opportunity to

---

[1] The contract is with Tava Lifestyle, LLC, a Tava Ventures Inc. company, but the scope of work section of the contract is with "Tava, Inc." Tava, Inc. initiated this lawsuit. The parties define both entities collectively as "Tava," and there is no dispute that Tava is a Texas resident. Therefore, we make no distinction between the Tava entities for purposes of our analysis.

[2] Five days later, ShockTheory filed a suit against Tava in Georgia for unpaid invoices.

examine Mack on her declaration. When the hearing concluded, the court denied Shock Theory's special appearance. That denial is the subject of this interlocutory appeal.

## II. ANALYSIS

### A. Standard of Review and Burden of Proof

A court must have both subject matter jurisdiction over a case and personal jurisdiction over the parties to issue a binding judgment. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010). Personal jurisdiction involves a court's ability to bind a particular party to that judgment. *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996). Whether a court may exercise jurisdiction over a party is a question of law, which we review de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Resolving this question of law, though, may require a court to decide questions of fact. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). When, as here, the trial court does not issue findings of fact and conclusions of law with its judgment, we presume all factual disputes were resolved in favor of the trial court's decision unless they are challenged on appeal. *Id*. Because implied findings are not conclusive, they may be challenged for legal and factual sufficiency on appeal. *Lensing v. Curd*, 417 S.W.3d 152, 155 (Tex. App.—Dallas 2013, no pet.).

Texas courts may assert personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of

jurisdiction is consistent with federal due-process guarantees. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016). Consistent with federal due-process protections, a state may assert personal jurisdiction over a nonresident defendant only if the defendant has established "minimum contacts" with the forum state such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007).

The plaintiff bears the initial burden of pleading allegations sufficient to confer jurisdiction. *Moki Mac*, 221 S.W.3d at 574. The burden then shifts to the defendant to negate all bases of jurisdiction in those allegations. *Id.* (citing *BMC*, 83 S.W.3d at 793). The defendant may do so by showing that even if the plaintiff's allegations are true, the evidence is legally insufficient to establish jurisdiction. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). Or, the defendant may present evidence to disprove the plaintiff's allegations. *Id.* at 659.

A defendant's contacts with the forum can give rise to either general or specific jurisdiction. *Spir Star*, 310 S.W.3d at 872. A court has general jurisdiction over a nonresident defendant whose "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *TV Azteca*, 490 S.W.3d at 37. By contrast, specific jurisdiction "covers defendants less intimately connected with a state, but only as to a narrower class of claims." *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). The

minimum contacts necessary for specific jurisdiction are established if the defendant purposefully avails itself of the privilege of conducting activities in the forum state, *Luciano v. SprayFoamPolymers.Com., LLC*, 625 S.W.3d. 1, 3 (Tex. 2021) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011) (plurality opinion)), and the suit "arise[s] out of or relate[s] to the defendant's contacts with the forum." *Moki Mac*, 221 S.W.3d at 576.

In the court below, ShockTheory argued that it was not subject to general or specific jurisdiction. Tava did not contest the absence of general jurisdiction, nor do the parties argue general jurisdiction on appeal. Thus, our inquiry is confined to whether a Texas court may properly exercise specific jurisdiction over ShockTheory.

## B.      Purposeful Availment

The "touchstone of jurisdictional due process [is] 'purposeful availment.'" *Spir Star*, 310 S.W.3d at 873. That is, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Luciano*, 625 S.W.3d at 3 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Where the defendant has "deliberately" engaged in significant activities within a state, he "manifestly has availed himself of the privilege of conducting business there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985).

When determining whether a nonresident purposefully availed itself of the privilege of conducting activities in Texas, we consider three factors: (1) only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person; (2) the contacts relied upon must be purposeful rather than random, isolated, or fortuitous; and (3) the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 70–71 (Tex. 2016). This analysis assesses the quality and nature of the contacts, not the quantity. *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013).

## C.    Relatedness

Notwithstanding the volume of purposeful contacts with the forum state, the exercise of specific jurisdiction is prohibited if "the suit" does not "aris[e] out of or relat[e] to the defendant's contacts with the forum." *See Luciano*, 625 S.W.3d. at 8. This so-called relatedness inquiry defines the appropriate "nexus between the nonresident defendant, the litigation, and the forum." *Moki Mac*, 221 S.W.3d at 579, and is satisfied by a "substantial connection" between the nonresident defendant's contacts and the "operative facts of the litigation." *Moki Mac,* 221 S.W.3d at 585. "In other words, 'specific jurisdiction' is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Luciano*, 625 S.W.3d. at 8 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

## D.  Pleadings and Evidence

Tava's original petition seeking declaratory relief on the contract averred that the court has personal jurisdiction over ShockTheory because it conducts business in Texas, entered into a contract with a Texas resident, and otherwise purposefully availed itself of the benefits of doing business in Texas. The petition further alleges that Tava engaged ShockTheory to provide marketing and advertising services for Tava in Texas and that a dispute exists concerning the expiration date of the agreement and whether Tava has fully compensated ShockTheory for services provided. This is sufficient to bring ShockTheory within reach of the long-arm statute. *See Assurance Generales Banque Nationale v. Dhalla*, 282 S.W.3d 688, 695 (Tex. App.—Dallas 2009, no pet.) (minimal pleading requirement satisfied by alleging that nonresident is doing business in Texas). Accordingly, the burden shifted to ShockTheory to negate all alleged bases of jurisdiction. *See Moki Mac*, 221 S.W.3d at 574.

ShockTheory's first challenge to the court's implied fact findings is that Mack's declaration and testimony did not demonstrate her personal knowledge and she was therefore not competent to testify. As to Mack's declaration, ShockTheory did not object that it was defective or otherwise inadmissible. To the contrary, ShockTheory's counsel acknowledged that no objection was lodged because he presumed Mack would testify and there would be "no need."

ShockTheory's counsel then requested and was allowed to examine Mack at the hearing. When Mack testified, counsel did not object that she lacked personal knowledge or was otherwise not competent to testify or request any type of ruling from the trial court.[3] Consequently, ShockTheory has not preserved these issues for our review. *See* TEX. R. APP. P. 33.1(a); *see also Grupo TMM, S.A.B. v. Perez*, 327 S.W.3d 357, 361 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (failure to raise objections to defects in special appearance affidavit waives that complaint on appeal). We therefore consider Mack's declaration and testimony in our analysis.

ShockTheory also argues that there is no purposeful availment because its contractual performance did not specifically target Texas markets and its e-mails, phone calls, and fortuitous contacts with Tava's customers and distributors are insufficient to support the trial court's jurisdictional conclusion.

Notably, however, there is no evidence to prove or even suggest that ShockTheory did not specifically target Texas markets. To the contrary, Mack testified that ShockTheory knew its material would largely target the Texas market and would promote Tava's products to Texas residents for Tava's representatives, who are also Texas residents.

---

[3] At one point in arguments to and discussion with the court, ShockTheory's counsel opined that Mack's declaration was not an affidavit pursuant to TEX. R. CIV. P. 120a but did not raise an objection or request a ruling on this basis.

It is undisputed that ShockTheory entered a contract with a Texas company. Standing alone, this does not necessarily establish minimum contacts sufficient to support jurisdiction. *Burger King*, 471 U.S. at 478–79; *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 786 (Tex. 2005); *Olympia Cap. Assocs. L.P. v. Jackson*, 247 S.W.3d 399, 417 (Tex. App.—Dallas 2008, no pet.). But a single contract may establish sufficient minimum contacts when considered against a backdrop of "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 478–79; *see also Nance Intern., Inc. v. Oceanmaster Eng'g PTE, Ltd.*, No. 01-11-00664-CV, 2012 WL 5381224, at *8 (Tex. App.—Houston [1st Dist.] Nov. 1, 2012, no pet.) (mem. op.) (considering cumulative effect of contacts).

The Williams Affidavit states that Tava representatives met with her in Georgia to discuss ShockTheory's engagement and she then communicated with Mack via e-mail concerning the agreement and scope of services. Williams does not address where the contract was to be performed.

A contract's place of performance is important. *Citrin Holdings, L.L.C. v. Minnis*, 305 S.W.3d 269, 282 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Indeed, the Texas long-arm statute specifically references place of performance and provides that a nonresident does business in this state if the nonresident contracts with a Texas resident and either party is to perform the contract in whole or in part in this state. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(1); *see also Fleischer*

*v. Coffey*, 270 S.W.3d 334, 338 (Tex. App.—Dallas 2008, no pet.) (contract calling for performance in Texas can support personal jurisdiction in appropriate circumstances).

Although the long-arm statute provides that performance by either party constitutes doing business in this state, our analysis is limited to ShockTheory's performance because Tava's actions cannot be considered a ShockTheory contact with Texas. *See KC Smash 01, LLC v. Gerdes Hendrichson Ltd., L.L.P.*, 384 S.W.3d 389, 394 (Tex. App.—Dallas 2012, no pet.); *see also Haddad v. ISI Automation Int'l, Inc.*, No. 04-09-00562-CV, 2010 WL 1708275, at *5 (Tex. App.—San Antonio Apr. 28, 2010, no pet.) (mem. op.) (electronic media system designer's performance of work in Texas for Mexican client was designer's contact, not client's).

The express terms of the contract here are silent regarding the place of performance. The scope of work section states that ShockTheory will provide consulting, corporate brand identity, web development, product packaging and design, and events. Only one event, the official launch, is specified to occur in Georgia. Thus, the contract itself does little to inform our place of performance analysis.

The Mack Declaration, however, states that the agreement is performable in part in Texas, and ShockTheory provided no evidence to the contrary. Context for who was responsible for such performance appears in a separate paragraph of the declaration stating:

Pursuant to the Agreement, ShockTheory agreed to perform brand development, brand and marketing consulting, website development, social media solutions, even planning and production, and content development services for Tava in Texas. The marketing services performed by ShockTheory for Tava were intended to and did target Texas consumers and were intended to and did target Texas as the marketplace for the marketing and sale of Tava's products and services

. . . .

Although certain inferences might be drawn from Williams's statement that ShockTheory never traveled to Texas, ShockTheory does not argue such inferences, nor does it challenge the court's implied finding that the contract called for Texas performance. Mack's uncontroverted testimony was that it did. Moreover, ShockTheory did not controvert Mack's statement that ShockTheory's services were intended to and did target the Texas market.[4]

During ShockTheory's examination of Mack, counsel inquired if there were specific e-mails indicating that advertising was directed at Texas. Mack replied:

So the words were not used that this is advertised in Texas, but the implication was because that was part of the job and that was the market and the residents were here and the consumers were here and the distributors were here, that [ShockTheory] was developing content that was for the benefit of everybody, including the Texas market.

 Mack further testified that Tava products are sold and manufactured in Texas. Although Mack acknowledged that Tava has distributors and customers in other

---

[4] The parties did not litigate, nor do they argue now whether "targeting the market" to sell Tava's, as opposed to ShockTheory's products is too attenuated to be considered a "constitutionally cognizable contact." Likewise, there is no argument that paying ShockTheory from a Texas bank account and directing invoices to Tava in Texas are but collateral relations to Texas. *See Michiana*, 168 S.W.3d at 788 (quoting *Woodson World-Wide Volkswagen Corp.*, 444 U.S. 286, 289 (1980)). We confine our analysis accordingly.

states, she testified that when the parties entered the contract, Tava indicated that it wanted to target Texas consumers. ShockTheory's knowledge that it was targeting the Texas market is inconsistent with its argument that its Texas contacts were random and fortuitous.

The contract also provides a travel allowance. According to Mack, the purpose of the travel allowance was to pay ShockTheory's travel expenses "to come to Texas to perform services for Tava pursuant to the agreement." This evidence is undisputed.

A contract's choice of law provision is another important aspect of our jurisdictional analysis. *See Citrin,* 305 S.W.3d at 282. The contract here is governed by Georgia law. This suggests that no local availment was intended. *Searcy v. Parex Resources, Inc*., 496 S.W.3d 58, 75 (Tex. 2016). While this weighs against personal jurisdiction, it is not dispositive. *Citrin,* 305 S.W.3d at 282.[5]

Tava argues that that the parties engaged in numerous telephone conversations and e-mails, as well as some video conferences in connection with ShockTheory's performance of the contract and suggests that the volume of such communication is "persuasive." We disagree.

---

[5] Tava points to a different contract provision purportedly granting ShockTheory the right to seek injunctive relief for confidentiality breaches "in a court of competent jurisdiction" and argues that the only court of competent jurisdiction that could enjoin Tava is a Texas court. Tava misreads the contract. The right to seek injunctive relief is granted to "Client," which is defined as Tava. Therefore, the contract provides that **Tava** may seek injunctive relief against **ShockTheory** for confidentiality breaches. Whether such a right could be exercised in a Texas court begs the question.

In *Old Republic Title Ins. Co. v. Bell*, 549 S.W.3d 550, 560 (Tex. 2018), the Texas Supreme Court explained:

> When communications between a nonresident are alleged as the basis for jurisdiction, we look to the quality and nature of the communications to establish purposeful availment . . . On their own, numerous telephone conversations with people in Texas do not establish minimum contacts, and we have noted that changes in technology may render reliance on phone calls obsolete as proof of purposeful availment.

*Id.*; *see also Riverside Exports, Inc. v. B.R. Crane & Equip., LLC*, 362 S.W.3d 649, 655 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (applying analysis to emails). Although *Old Republic* leaves open the possibility that some communications of an undefined "quality and nature" may be considered as part of the jurisdictional mix in certain unspecified contexts, our court has held that telephone and written communications regarding a contract in the forum state do not establish jurisdiction even if such communications are extensive. *Invasix, Inc. v. James*, No. 05-19-00494-CV, 2020 WL 897243, at *8 (Tex. App.—Dallas Feb. 25, 2020, no pet.) (mem. op.); *see also Univ. of Alabama v. Suder Foundation*, No. 05-16-00691-CV, 2017 WL 655948, at *5 (Tex. App.—Dallas Feb. 17, 2017, no pet.) (mem. op.) (letters, e-mails, and videoconferences do not establish minimum contacts); *KC Smash*, 384 S.W.3d at 393 (phone contacts, e-mail and sending payment to Texas not purposeful availment); *Olympia Capital Assoc., L.P. v. Jackson*, 247 S.W.3d 399, 418 (Tex. App.—Dallas 2008, no pet.) (communications regarding execution and performance of contract between resident and nonresident

insufficient to establish minimum contacts).[6] Our record does not include the substance of any of these communications; we know only that they occurred. Moreover, even if the phone calls, videoconferences, and e-mails are sufficiently connected to the claim at issue in this case, "a proper minimum contacts analysis looks to the defendant's contacts with the forum itself, not the defendant's contacts with persons who reside there." *Old Republic*, 599 S.W.3d at 561; *see also Bryan v. Gordon*, 384 S.W.3d 908, 916–17 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (jurisdiction should not be determined by the fortuitous location of the Texas resident when the nonresident communicates with them). Without more, we cannot conclude that the communications here add anything to the minimum contacts equation.

ShockTheory argues that "other than the virtual meetings, e-mails, telephone calls, and payment from a Texas bank" the uncontroverted facts are that ShockTheory never traveled to Texas, recorded all website content in Georgia, created Tava's packaging designs in Georgia, accessed Tava's websites in Georgia, and met with Tava's representatives in Georgia. While the Williams Affidavit does state that ShockTheory never traveled to Texas and physical meetings occurred in

---

[6] We are cognizant that this court has previously considered these types of communication, albeit in a different context, and not as dispositive on the purposeful availment analysis. *See B.C.G. v. M.Y.R.*, 05-20-00318-CV, 2020 WL 5987913, at *5 (Tex. App.—Dallas Oct. 9, 2020, pet. denied) (mem. op.). But the *B.C.G.* case, involving an invasion of privacy claim, was expressly limited to its facts. *Id*.

Georgia, nothing in the record establishes the other assertions as fact, uncontroverted or otherwise.

Specifically, ShockTheory provides no record support for the proposition that it recorded all website content in Georgia, created Tava's packing designs in Georgia, and accessed Tava's websites in Georgia and our review reveals no direct evidence in the record. Indeed, the only reference to any type of recording occurred during Mack's examination, and is ambiguous at best.[7] Similarly, while ShockTheory's special appearance states that "ShockTheory developed Tava's web pages," it does not specify where such development occurred, and offers no proof to establish the statement as fact. Instead, the special appearance cites to a paragraph in the Williams Affidavit stating that she communicated with Tava about branding, website, and planning for the Atlanta event.[8]

Unquestionably, ShockTheory's Texas contacts are not extensive, and on a different record might be characterized as so random or fortuitous as to deprive Texas of jurisdiction. But ShockTheory had the burden to negate all alleged bases

---

[7] Mack initially testified that Tava recorded the virtual presentations and recalled one occasion when she had gone to Atlanta. When asked if she ever attended a conference or presentation or Atlanta, and whether "those" were recorded in Atlanta, she responded, "Yes. I'm going to say yes because they were streaming, and we had production teams with cameras and all that stuff." Thus, the testimony is unclear as to who was doing the recording and whether the recording that occurred in Atlanta was one the one occasion Mack recalled being there. In addition, it is unclear whether the recorded conference(s) and presentation(s) are the equivalent of recording web site content. Mack could not recall whether ShockTheory ever came to Texas with a production team to do any recording.

[8] Our analysis relies on direct evidence and the issues that were raised rather than the inferences and arguments that might have been made from circumstantial evidence.

of jurisdiction, including the allegation that the contract was to be partially performed in Texas. *See Moki Mac*, 221 S.W.3d at 574. ShockTheory did not meet this burden. Because the undisputed evidence establishes that ShockTheory contracted with a Texas resident, with the contract to be partially performed by ShockTheory in Texas, and ShockTheory's performance was directed at the Texas market, the trial court did not err in concluding that ShockTheory purposefully availed itself of the privilege of conducting business in this state.

Having concluded that the purposeful availment prong is met, we next consider whether ShockTheory's potential liability arises from or relates to the forum contacts. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 227 (Tex. 1991). There must be a substantial connection between the defendant's contacts with the forum and the operative facts of the litigation. *Moki Mak*, 221 S.W.3d at 585. The "operative facts" of the litigation are those facts the trial court will focus on to determine the defendant's liability. *Kaye/Bassman Int'l Corp. v. Dhanuka*, 418 S.W.3d 352, 357 (Tex. App.—Dallas 2013, no pet.). Whether a plaintiff's claims arise from or relate to the nonresident defendant's Texas contacts is a question of law. *Moncrief*, 414 S.W.3d at 150 n.4.

ShockTheory offers no argument or authority that the "relatedness" prong is not met, nor is there evidence establishing that Tava's contract claims do not arise

from ShockTheory's performance of the contract in Texas.[9] Accordingly, based on the record before us, the requisite nexus between ShockTheory's contacts and the litigation has been met.

## E.     Fair Play and Substantial Justice

Having concluded minimum contacts exist, we would ordinarily next consider whether the exercise of personal jurisdiction satisfies the traditional notions of fair play and substantial justice. *Moncrief*, 414 S.W.3d at 154. ShockTheory bears the burden to present a compelling case that other considerations render the exercise of jurisdiction unreasonable. *See Burger King,* 471 U.S. at 477. Despite this burden, ShockTheory makes no argument that it is unduly burdensome for it to defend this case in Texas, nor does it address any other factor in the analysis. Without more, we have no basis for concluding it would violate traditional notions of fair play and substantial justice to proceed with this suit in Texas.

## III.   CONCLUSION

We resolve ShockTheory's issues against it and affirm the trial court's order.


/Dennise Garcia/
DENNISE GARCIA
JUSTICE

210182F.P05

---

[9] In a single sentence, ShockTheory argues that "while the dispute admittedly arises from the Agreement, ShockTheory's contacts with Texas bare [sic] no relation to the underlying dispute."



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SHOCKTHEORY DLV, INC.,
Appellant

No. 05-21-00182-CV     V.

TAVA VENTURES, INC., Appellee

On Appeal from the 416th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 416-03195-
2020.
Opinion delivered by Justice Garcia.
Justices Schenck and Smith
participating.

In accordance with this Court's opinion of this date, the trial court's order is **AFFIRMED**.

It is **ORDERED** that appellee TAVA VENTURES, INC. recover its costs of this appeal from appellant SHOCKTHEORY DLV, INC..

Judgment entered September 22, 2021.